UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

BEFORE HONORABLE DANA M. SABRAW, JUDGE PRESIDING

```
_____
                                )
UNITED STATES OF AMERICA,       )
            PLAINTIFF,          )     CASE NO. 16CR0354-DMS
                                )
                                )     SAN DIEGO, CALIFORNIA
                                )      FRIDAY JULY 1, 2016
                                )       9:00 A.M. CALENDAR
JOEL ALEXANDER WRIGHT,          )
            DEFENDANT.          )
_____)
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS

<u>SENTENCING HEARING</u>

COUNSEL APPEARING:

FOR PLAINTIFF:          ADAM BRAVERMAN
                        UNITED STATES ATTORNEY
                        BY:  ANDREW HADEN
                        ASSISTANT U.S. ATTORNEY
                        880 FRONT STREET
                        SAN DIEGO, CALIFORNIA 92101

FOR DEFENDANT:          FEDERAL DEFENDERS OF SAN DIEGO, INC.
                        BY:  GREGORY T. MURPHY
                          TRIAL ATTORNEY
                        225 BROADWAY, SUITE 900
                        SAN DIEGO, CALIFORNIA 92101


REPORTED BY:            LEE ANN PENCE,
                        OFFICIAL COURT REPORTER
                        UNITED STATES COURTHOUSE
                        333 WEST BROADWAY ROOM 1393
                        SAN DIEGO, CALIFORNIA 92101

```
 1        SAN DIEGO, CALIFORNIA – FRIDAY, JULY 1, 2016 – 9:12 A.M.

 2                            *   *   *

 3            THE CLERK:  NO. 2 ON CALENDAR, CASE NO. 16CR0354,

 4   UNITED STATES OF AMERICA VERSUS JOEL ALEXANDER WRIGHT; ON FOR

 5   SENTENCE WITH PROBATION OFFICE REPORT.

 6            MR. MURPHY:  GOOD MORNING, YOUR HONOR.  GREG MURPHY,

 7   FEDERAL DEFENDERS, FOR MR. WRIGHT.

 8            THE COURT:  GOOD MORNING.

 9            MR. HADEN:  AND GOOD MORNING, YOUR HONOR.  ANDREW

10   HADEN ON BEHALF OF THE UNITED STATES.

11            THE COURT:  GOOD MORNING.

12            MR. MURPHY:  YOUR HONOR, ALSO PRESENT IN COURT ARE

13   MR. WRIGHT'S MOTHER AND PEDIATRICIAN, A LONG-TIME FRIEND OF

14   THE FAMILY.  THEY HAVE FLOWN HERE FROM VERMONT.

15            THE COURT:  YES.  GOOD MORNING.

16            DID COUNSEL RECEIVE THE MODIFIED TERMS OF SUPERVISED

17   RELEASE?

18            MR. MURPHY:  I DID, YOUR HONOR.  I REVIEWED THOSE

19   WITH HIM YESTERDAY.

20            THE COURT:  ANY OBJECTION TO THOSE MODIFIED TERMS?

21            MR. MURPHY:  THERE IS ONE THING THAT MAY TURN OUT TO

22   BE AN ISSUE, OR MAY NOT.  IT MAY BE BEST DEALT WITH WHEN HE IS

23   ON SUPERVISED RELEASE.  AND THAT HAS TO DO WITH -- AS THE

24   COURT KNOWS, I THINK, MR. WRIGHT IS BLIND AND SO DOES

25   SOMETIMES REQUIRE MACHINERY THAT PERMITS HIM TO -- THAT MAY OR
```

1  MAY NOT CONNECT TO THE INTERNET THAT WOULD PERMIT HIM TO READ

2  THINGS AND COMMUNICATE.

3        AND I DON'T KNOW THE SPECIFICS OF THAT, BUT I CAN

4  SEE THAT RUNNING AFOUL OF ONE OF THOSE CONDITIONS.

5        **THE COURT:**  ALL RIGHT.

6        WHAT CONDITION NUMBER IS THAT, DO YOU KNOW?

7        **MR. MURPHY:**  I WANT TO SAY 3. -- I CAN LOOK AGAIN,

8  BUT I WANT TO SAY 3.

9        **THE COURT:**  PROBABLY 3.

10       **MR. MURPHY:**  ANY DEVICE THAT MAY CONNECT TO THE

11  INTERNET.  LET ME DOUBLE-CHECK.

12       **THE COURT:**  OKAY.

13       **MR. MURPHY:**  NOT 3.  4.

14       **THE COURT:**  4 HAS TO DO WITH DISCLOSURE?

15       **MR. MURPHY:**  I BELIEVE 4 ON -- HAS TO DO WITH USING

16  OR POSSESSING ANY DEVICES WHICH CAN COMMUNICATE DATA.

17       **THE COURT:**  MR. WRIGHT IS NOW PRESENT.

18       WE CAN DISCUSS IT.

19       **MR. MURPHY:**  FAIR ENOUGH.

20       **THE COURT:**  MY CONDITION 4 IS DIFFERENT, BUT WE WILL

21  COME BACK TO THAT.

22              **(DISCUSSION OFF THE RECORD BETWEEN THE**

23              **DEFENDANT AND COUNSEL)**

24       **MR. MURPHY:**  THANKS, JUDGE.

25       **THE COURT:**  YOU HAVE REVIEWED THE PRESENTENCE REPORT

1    WITH YOUR CLIENT?

2              **MR. MURPHY:**  I HAVE, YOUR HONOR.

3              **THE COURT:**  I HAVE REVIEWED THE P.S.R., GOVERNMENT

4    AND DEFENDANTS' SENTENCING SUMMARY CHART, GOVERNMENT AND

5    DEFENDANTS' OBJECTIONS TO THE P.S.R., THE ADDENDUM TO THE

6    P.S.R.  MR. WRIGHT'S SENTENCING MEMORANDUM, EXHIBITS,

7    PSYCHOLOGICAL EVALUATION AND LETTERS.

8              THE TENTATIVE, WITH RESPECT TO THE GOVERNMENT'S

9    OBJECTIONS TO THE P.S.R., WOULD BE TO GRANT THOSE.  AND THE

10   COURT HAS PROVIDED MODIFIED TERMS AND CONDITIONS WHICH WERE

11   PROVIDED TO COUNSEL.

12             AS TO THE DEFENDANT'S OBJECTIONS TO THE P.S.R., THE

13   TENTATIVE IS GOING TO BE TO FOLLOW THE GUIDELINE CALCULATIONS

14   SET OUT IN THE PLEA AGREEMENT, SO I WOULD SIMPLY DENY IT AS

15   MOOT.

16             I WOULD LIKE TO HEAR ARGUMENT WITH RESPECT TO THE

17   SENTENCE IMPOSED UNDER THE 3553 FACTORS.

18             THE TENTATIVE WOULD BE TO FOLLOW THE GUIDELINE RANGE

19   SET OUT IN THE PLEA AGREEMENT AT 168 TO 210 MONTHS.

20             I WOULD LIKE TO HEAR ARGUMENT WITH RESPECT TO THE

21   ACTUAL SENTENCE THAT IS IMPOSED, AND WHAT RANGE MIGHT BE

22   APPROPRIATE WITHIN THAT GUIDELINE RANGE.  AND SO, WITH THAT, I

23   WOULD LIKE TO HEAR DISCUSSION IN THAT REGARD.

24             MR. MURPHY.

25             **MR. MURPHY:**  THANK YOU, JUDGE.

1       AS THE COURT KNOWS FROM MY PAPERS, THIS IS -- AND

2  FROM THE GOVERNMENT'S, THIS IS A CASE WHERE THE PARTIES ARE

3  NOT SO FAR APART IN OUR RECOMMENDATIONS TO THE COURT.

4       I RECOMMENDED A SENTENCE AT THE MANDATORY MINIMUM

5  120 AND MS. SERANO -- WHO I BELIEVE IS IN TRIAL NEXT DOOR AND

6  THE COURT COULD CALL HER OVER IF IT WANTED TO -- RECOMMENDED

7  168 MONTHS.

8       THAT WAS A -- YOU KNOW, THIS WAS NOT A FAST TRACK

9  CASE, THIS WAS A CASE THAT, YOU KNOW, INVOLVED A GREAT DEAL OF

10 ANALYSIS AND DISCUSSION BETWEEN THE PARTIES.  MS. SERANO HAD

11 ACCESS TO A UNIVERSE OF INFORMATION, INVESTIGATIONS ACROSS THE

12 COUNTRY.

13      WE -- AND, OF COURSE, MR. WRIGHT, AS I REPRESENTED

14 IN MY PAPERS, WAS EAGER TO ACCEPT RESPONSIBILITY EARLY.  AND I

15 THINK THAT THE RANGE THAT WE HOPED THE COURT WOULD BE WORKING

16 WITHIN, THAT IS THAT THE GOVERNMENT'S RECOMMENDATION, OUR

17 RECOMMENDATION, WAS FAIR.

18      MS. SERANO CERTAINLY MORE THAN ME, AND PERHAPS EVEN

19 MORE THAN THE COURT, HAS AN IDEA OF, YOU KNOW, WHAT THESE

20 CASES ARE WORTH BECAUSE SHE PROSECUTES ALL OF THE CASES IN

21 THIS DISTRICT, OR IS INVOLVED IN THE PROSECUTION OF ALL OF

22 THESE CASES IN THE DISTRICT.

23      SO I THINK WHEN SHE RECOMMENDS A SENTENCE THAT --

24 YOU KNOW, I HOPE THE COURT ALWAYS LISTENS TO OUR

25 RECOMMENDATIONS, BUT I DO THINK THAT HER ASSESSMENT CAN

1   REASONABLY BE TAKEN AS A -- YOU KNOW, AS REFLECTING THE

2   CONSIDERED JUDGMENT OF THE PROSECUTOR IN A CASE AS TO THE

3   RELATIVE CULPABILITY AND RESPONSIBILITY OF AN OFFENDER.

4           SO I GUESS -- THAT WASN'T WHERE I PLANNED TO START,

5   BUT I DO THINK THOSE THINGS ARE TRUE.  AND, YOU KNOW, THAT'S

6   BEEN MY IMPRESSION, CERTAINLY, WORKING WITH HER THAT SHE GIVES

7   SOME THOUGHT TO WHERE EACH CASE FITS IN IN THE SCHEME OF

8   OTHERS.

9           I HAVE URGED THE COURT TO CONSIDER A SENTENCE

10  SOMEWHAT LOWER THAN HERS FOR THE REASONS I SET FORTH IN MY

11  MEMORANDUM, WHICH ARE -- YOU KNOW, WHICH WAS SHORT, BUT I HOPE

12  COMPREHENSIVE.

13          I THINK THE THINGS THAT -- A COUPLE THINGS I WANT TO

14  EMPHASIZE TODAY, THAT I HOPE WILL BE VALUABLE TO THE COURT

15  ARE, FIRST, I THINK THE COURT KNOWS SOMETHING ABOUT MR.

16  WRIGHT'S BACKGROUND.  YOU KNOW, HE WAS BORN SEVERELY DISABLED.

17  HE UNDERWENT A SERIES OF SURGERIES WITHIN EARLY -- YOU KNOW,

18  WITHIN MONTHS OF HIS LIFE.

19          HE HAS -- HE HAS, YOU KNOW, A LITANY OF HEALTH

20  PROBLEMS THAT MEAN THAT HE IS IN PAIN, AND TO SOME EXTENT

21  REALLY EVERY SINGLE DAY HIS LIFE.  NOT JUST THE CONSTANT EYE

22  PAIN CAUSED BY THE GLAUCOMA PRESSURE THAT IS GOING TO -- THAT

23  HAS COST HIM ALMOST ALL OF HIS SIGHT, AND WILL CERTAINLY COST

24  HIM THE REST OF HIS SIGHT DURING THE TIME HE IS IN CUSTODY.

25  NOT JUST THE, LIKE, MUSCLE WEAKNESS THAT MAKES IT DIFFICULT

1   FOR HIM TO STAND FOR A LONG PERIOD OF TIME, MAKES IT MORE

2   DIFFICULT FOR HIM TO PARTICIPATE IN ACTIVITIES.  MAKES IT

3   DIFFICULT FOR HIM TO DO MANY THINGS.  NOT JUST THE HEADACHES.

4   NOT JUST THE SKIN ALLERGIES.

5            NOT JUST -- I MEAN, THERE IS A UNIVERSE OF THINGS

6   THAT MEAN THAT MR. WRIGHT, IN EVERY MOMENT OF HIS LIFE, FROM

7   THE DAY OF HIS BIRTH, REALLY, HAS BEEN TO SOME DEGREE OR

8   ANOTHER IN -- YOU KNOW, HAS EXPERIENCED PAIN.

9            AND HE HAS, NOTWITHSTANDING THAT -- WHICH IS REAL,

10  WHICH IS CORROBORATED BY THE MEDICAL RECORD -- HE HAS

11  ACCOMPLISHED, YOU KNOW, QUITE A LOT.

12           HE HAS -- FROM VERY EARLY ON HE DID VERY WELL IN

13  SCHOOL DESPITE HAVING QUITE A DIFFICULT TIME.  YOU KNOW, HE

14  CAN'T SEE, HE CAN'T PARTICIPATE IN A LOT OF WAYS, BUT HE GOT

15  GOOD GRADES.  STARTING AS AN EARLY -- AS A CHILD HE DEVELOPED

16  A REAL COMMITMENT TO THE CHURCH, AN INTEREST IN BECOMING A

17  PRIEST.

18           THE PROBATION OFFICER, I THINK VERY REASONABLY,

19  LOOKS AT HIS INTEREST IN THE PRIESTHOOD AS, LIKE, SORT OF, YOU

20  KNOW THE ACT OF A PREDATOR.  BUT I PROVIDED TO THE COURT

21  RECORDS FROM -- SHOWING WHEN HE WAS EIGHT HE WAS TALKING --

22  HE WAS VOLUBLE ABOUT WANTING TO BE A PRIEST LONG BEFORE

23  ANYTHING LIKE THIS WAS EVEN IN -- YOU KNOW, EVEN IMAGINABLE.

24           THIS IS A -- YOU KNOW, WHEN HE WAS A -- WHEN HE WAS

25  A VERY YOUNG CHILD HE WAS ALREADY INVOLVED IN HIS CHURCH, IN

1   HIS COMMUNITY.  HE WAS -- YOU KNOW, HE WAS ADMIRED BY HIS

2   DOCTORS, BY HIS FRIENDS, BY HIS TEACHERS.  HE WAS --

3   THROUGHOUT ADOLESCENCE HE WAS VOLUNTEERING.  HE WAS ASSISTING

4   PEOPLE.  HE WAS GIVING LECTURES.  AND HE WAS DOING -- HE WAS

5   DOING WELL IN SCHOOL TO THE EXTENT THAT, YOU KNOW, WAS

6   IMPRESSIVE GIVEN HIS DISABILITIES.

7          HE HAS DEMONSTRATED HIMSELF, UNTIL THE MOMENT OF HIS

8   ARREST HERE, TO BE SOMEBODY WHO IS, YOU KNOW, NOT JUST NOT --

9   YOU KNOW, THIS CONDUCT IS NOT JUST SORT OF OUT OF CHARACTER IN

10  THE SENSE THAT IT IS UNUSUAL, IT IS REALLY CONTRARY TO THE --

11  YOU KNOW, TO THE CHARACTER THAT HE HAS SHOWN HIS, YOU KNOW,

12  HIS ENTIRE LIFE.

13         AND HE STANDS HERE AS SOMEBODY WHO HAS ADMITTED THIS

14  CONDUCT, YOU KNOW.  SO I DON'T MEAN TO DIMINISH IT, BUT I DO

15  THINK THAT THAT LIFETIME OF EXPERIENCE -- HE IS ONLY 22, BUT

16  THE COURT CAN LOOK -- OR 23, I GUESS.  CAN LOOK AT THE

17  UNIVERSE OF TIME BEFORE HIM AND THE COURT CAN CONCLUDE THAT HE

18  IS SOMEBODY WHO IS CAPABLE OF BEING -- YOU KNOW, HE ISN'T A

19  SOCIOPATH, HE ISN'T WITHOUT EMPATHY.  HE IS SOMEBODY WHO CAN

20  BE -- WHO KNOWS -- WHO IS ABLE TO -- TO TURN THE CORNER ON

21  THIS.  AND HAS FOUGHT THIS FOR SOME TIME, STRUGGLED TO FIND

22  HELP.  NOW HE IS GETTING THIS HELP AND IS DETERMINED TO MAKE

23  THE MOST OF IT.

24         AS THE COURT KNOWS, FOUR MONTHS AGO, OR SOMETHING, I

25  FILED A MOTION ASKING THE COURT TO SENTENCE HIM TO A

1    PARTICULAR INSTITUTION BECAUSE THAT PARTICULAR INSTITUTION
2    OFFERS THE MOST RIGOROUS TREATMENT PROGRAM THAT THE BUREAU OF
3    PRISONS HAS.  IT IS ALSO A PLACE THAT MAKES SENSE FOR HIM FOR
4    OTHER REASONS, I THINK.  BUT THIS WAS SOMETHING THAT MR.
5    WRIGHT WAS -- WANTED.

6             I THINK -- SO I THINK THAT THAT -- THOSE -- THAT
7    HISTORY, COMBINED WITH THE REALITY OF SUPERVISION, COMBINED
8    WITH HIS DISABILITIES, CAN SPEAK -- SHOULD SPEAK SOMEWHAT TO
9    THE COURT'S LEGITIMATE CONCERN FOR INCAPACITATION.

10            ALSO CONCERN -- ALSO, I THINK, RELEVANT IS THE FACT
11   THAT HE MAINTAINS, UNLIKE MANY PEOPLE WHO HAVE COME BEFORE
12   HIM -- COME BEFORE THE COURT HAVING PLED GUILTY TO THESE
13   CRIMES, HE MAINTAINS THE DEVOUT SUPPORT OF HIS FAMILY.  THEY
14   HAVE FLOWN HERE FROM VERMONT.  THEY ARE PEOPLE OF LIMITED
15   MEANS.

16            WHEN THEY MET YESTERDAY, WHEN HE SPOKE TO HIS MOM
17   YESTERDAY THAT WAS THE FIRST TIME THEY HAD SPOKEN IN PERSON
18   SINCE HIS ARREST.

19            AND SHE HAS WRITTEN THE COURT AND EXPLAINED THAT SHE
20   WILL GIVE HIM A HOME.  THAT SHE WILL MAKE -- YOU KNOW, THAT
21   SHE WILL TAKE CARE OF HIM.

22            HE HAS ACCESS TO SOCIAL SECURITY DISABILITY PAYMENTS
23   SO HE WILL BE ABLE TO SURVIVE.  AND, YOU KNOW, IN THAT
24   ENVIRONMENT HE WON'T HAVE SOME OF THE CHALLENGES THAT MAKE IT
25   DIFFICULT FOR OTHER PEOPLE TO, YOU KNOW, TO SUCCEED POST

1   RELEASE.

2          AND, AS THE COURT KNOWS, THE BUREAU OF PRISON'S OWN

3   STATISTICS SHOW THAT THE RECIDIVISM RATE FOR PEOPLE WHO ARE

4   JUST GENERIC DEFENDANTS, WHO ARE CONVICTED OF CRIMES LIKE MR.

5   WRIGHT, ARE VERY, VERY GOOD.  AND THERE IS LOTS OF REASONS TO

6   THINK THAT MR. WRIGHT WILL DO BETTER THAN THE GENERIC

7   DEFENDANT, NOT JUST BECAUSE OF HIS MOTIVATION BUT ALSO

8   BECAUSE OF HIS DISABILITIES AND BECAUSE OF THE FAMILY SUPPORT.

9          SO THOSE ARE THE ARGUMENTS I THINK I MADE PRIMARILY

10  IN MY SENTENCING PAPERS.  I DO THINK THAT THEY ARE RIGHT.

11         THE OTHER THING I WOULD SAY TO THE COURT IS THAT,

12  YOU KNOW, PART OF WHAT HAPPENS HERE IS PUNISHMENT.  YOU KNOW,

13  IT IS NOT THE PART THAT WE, AS DEFENSE ATTORNEYS, TALK ABOUT

14  AS MUCH.  AND -- BUT AS THE COURT CONSIDERS PUNISHMENT, I

15  THINK THAT, AGAIN, MR. WRIGHT'S EXPERIENCE OF CUSTODY IS

16  SOMETHING THE COURT CAN TAKE INTO CONSIDERATION.

17         HE IS -- BECAUSE OF HIS DISABILITIES, BECAUSE OF THE

18  NOTORIETY OF HIS CASE -- THERE IS PRESS HERE IN THE

19  COURTROOM -- HERE ARE -- HE EXPERIENCES CUSTODY IN A WAY THAT

20  IS MUCH MORE PAINFUL THAN MANY DEFENDANTS, AND WILL CONTINUE

21  TO.

22         WHEN HE WAS -- HE SPENT THE FIRST FOUR MONTHS OR SO

23  OF HIS INCARCERATION HERE AT THE MCC WHERE HE WAS IN SHU, IN

24  THE SPECIAL HOUSING UNIT FOR HIS OWN PROTECTION.  THE GUARDS

25  IN THE SPECIAL HOUSING UNIT MOCKED HIM, THEY PREVENTED HIM

1   FROM BUYING THINGS AT THE COMMISSARY.  THEY PREVENTED HIM FROM
2   USING THE PHONES.  HE WOULD GO MONTHS BETWEEN HAVING ANY
3   CONVERSATION WITH ANYBODY BESIDES ME.

4           HE HAS BEEN TRANSFERRED NOW TO GEO WHERE HE HAS
5   DONE -- YOU KNOW, HE IS IN GENERAL POPULATION AND HE HAS BEEN
6   ALL RIGHT.  BUT, YOU KNOW, EVEN THERE PEOPLE HAVE BEEN TAKING
7   HIS FOOD, PEOPLE HAVE BEEN, YOU KNOW, TRYING TO PUSH HIM ONE
8   WAY OR ANOTHER.  HE IS A PERSON WHO IS VULNERABLE TO OTHER
9   INMATES IN A WAY THAT, YOU KNOW, I THINK PEOPLE ACCUSED OF
10  THESE CRIMES OR PLED GUILTY TO THESE CRIMES ALWAYS ARE, BUT
11  MR. WRIGHT IS PARTICULARLY.  AND THAT MEANS THAT HIS
12  EXPERIENCE WILL BE DIFFICULT.

13          HE IS ALSO -- HE HAS ALSO HAD -- BUT HE IS -- YOU
14  KNOW, HE IS MANAGING.  HE IS NOT COMPLAINING, I AM JUST
15  TELLING THE COURT THINGS THAT I THINK ARE REAL.

16          THE OTHER THINGS, YOU KNOW, HIS EXPERIENCE OF
17  CUSTODY IS ALSO LIMITED IN A WAY.  YOU KNOW, THIS IS A GUY WHO
18  IS VERY, VERY COMMITTED TO TURNING THE CORNER AND GETTING BACK
19  TO THE PERSON HE WAS.  HE WAS AN ADMIRED PERSON.  HE WAS
20  SOMEBODY WHO -- YOU KNOW, WITH SORT OF AN ABERRANT SECRET.
21  AND NOW THAT THE SECRET IS OUT, HE WANTS TO GO BACK TO THAT
22  PERSON WHO WAS, YOU KNOW, STUDIOUS AND CARING AND RESPONSIBLE,
23  YOU KNOW.

24          THERE ARE CHALLENGES FOR HIM TO DO THAT BECAUSE HE
25  -- YOU KNOW, HE CAN'T SEE.  HE CAN'T WATCH TV.  HE CAN'T READ

1    WITHOUT ASSISTANCE.  HE GETS AUDIO -- HE CAN LISTEN TO AUDIO

2    RECORDINGS, BUT THOSE ARE DIFFICULT.  HE CAN'T EXERCISE IN THE

3    WAY THAT MOST INMATES DO.

4            YOU KNOW, IF THE COURT IMPOSES THE TEN-YEAR SENTENCE

5    THAT I AM RECOMMENDING, YOU KNOW, THAT -- THAT TIME WILL, BY

6    NECESSITY, BE SPENT IN CONTEMPLATION AND TREATMENT, AND NOT A

7    WHOLE LOT ELSE BECAUSE HE WON'T BE ABLE TO PARTICIPATE IN THE

8    NORMAL DAILY ACTIVITIES OF THE AVERAGE PRISONER.  YOU KNOW, HE

9    JUST DOESN'T HAVE THE -- BECAUSE OF HIS BLINDNESS AND ALSO

10   BECAUSE OF HIS LIMITED PHYSICAL CAPABILITIES THAT MEANS, YOU

11   KNOW, THAT THAT IS WHAT HE WILL BE DOING.

12           AND, AGAIN, I DON'T TELL YOU THESE THINGS BECAUSE I

13   WANT TO DISCOURAGE HIM OR BECAUSE I THINK THE COURT WILL TAKE

14   ANY JOY IN KNOWING THAT THIS WILL BE A DIFFICULT, YOU KNOW,

15   PROCESS FOR HIM.  BUT I DO TAKE -- I DO THINK THAT THE COURT'S

16   CONSIDERATION -- ULTIMATE CONSIDERATIONS SURELY MUST BE,

17   YOU KNOW, INCAPACITATION AND PUNISHMENT.  AND I THINK, YOU

18   KNOW, SO I AM TRYING TO ADDRESS THOSE -- THOSE TWO

19   CONSIDERATIONS.

20           I THINK THAT THERE ARE -- I THINK THAT THERE ARE --

21   YOU KNOW, I HAVE SPENT -- SO I HAVE BEEN, ESSENTIALLY, MR.

22   WRIGHT'S ONLY VISITOR SINCE HIS ARREST.  A PSYCHOLOGIST CAME

23   IN.  BUT I HAVE SEEN HIM AT LEAST ONCE, SOMETIMES TWICE A WEEK

24   SINCE HE CAME IN.

25           AND HE HAS BEEN, IN EVERY ENCOUNTER, NOT JUST

1   RESPECTFUL -- WHICH WE ALWAYS SAY -- BUT, YOU KNOW, ATTENTIVE.

2   YOU KNOW, REMORSEFUL.  HE HAS ASKED ASSISTANCE, HE HAS ASKED

3   ME TO INVESTIGATE HOW HE -- YOU KNOW, WHAT I CAN -- WHAT HE

4   CAN DO.  HOW HE CAN -- YOU KNOW, HOW HE CAN TURN THE CORNER.

5           HE HAS ASKED ME TO TALK TO HIS FAMILY.  HE HAS

6   EXPRESSED CONCERN ABOUT HIS MOM'S WELL-BEING, HIS

7   GRANDPARENTS' WELL-BEING.

8           HE HAS EXPRESSED CONCERN ABOUT MY WELL-BEING.  HE

9   CAN'T SEE ME, BUT HE HAS A -- HE CAN TELL WHEN I AM ANXIOUS

10  ABOUT SOMETHING OR ANOTHER.

11          HE IS -- YOU KNOW, WHEN -- WE SPOKE YESTERDAY, AND

12  IT WAS THE SAME.  HE KNEW HE WAS COMING HERE TODAY, AND AGAIN

13  HE WAS -- MUCH OF OUR CONVERSATION HAD TO DO WITH, YOU KNOW,

14  THE FEELINGS, THE CONCERNS OF THE PEOPLE WHO CARE ABOUT HIM,

15  AND HIS, YOU KNOW, REAL SORT OF REMORSE FOR -- FOR HIS CONDUCT

16  AND DETERMINATION TO -- TO GO FORWARD, YOU KNOW, TO TURN THE

17  CORNER.

18          I -- YOU KNOW, THE COURT HASN'T SPENT ANY TIME WITH

19  HIM SO THE COURT SORT OF JUST HAS TO TAKE MY WORD FOR IT AND

20  MS. SERANO'S EVALUATION OF THE CASE, PERHAPS THE WORD OF THE

21  PROBATION -- OF THE PSYCHOLOGIST.

22          THE PROBATION OFFICER DID SPEND, YOU KNOW, AN

23  HOUR -- A COUPLE OF HOURS WITH HIM.  AND ALTHOUGH HER

24  RECOMMENDATION IS HIGHER SHE DOES RECOMMEND A VARIANCE

25  DOWNWARD FROM WHERE SHE BELIEVES THE GUIDELINES ARE.  AND THE

1   COURT CAN ASSUME THAT THAT HAS SOMETHING TO DO FROM -- WITH

2   HER INTERACTION WITH HIM.

3           ULTIMATELY, YOU KNOW, MS. SERANO MADE THE

4   RECOMMENDATION THAT SHE THOUGHT WAS FAIR AT THE LOW END OF THE

5   GUIDELINE RANGE.  I HOPED THAT THE COURT WOULD HONOR THAT AS A

6   CEILING, AND THAT I WOULD BE ABLE TO PERSUADE THE COURT TO

7   GIVE A LITTLE BIT LOWER SENTENCE.

8           I DO THINK THAT THE RANGE THE PARTIES HAVE COME TO

9   THE COURT WITH IS ONE THAT IS CONSIDERED AND FAIR.  AND THAT

10  COMBINED WITH A DECADE OR SO OF SUPERVISED RELEASE WOULD BE

11  SUFFICIENT TO SATISFY THE 3553(A) FACTORS.

12          **THE COURT:**  YOU HAD MENTIONED THE REPORT FROM THE

13  PSYCHOLOGIST.  THERE IS NO DISCUSSION WITHIN THE REPORT ABOUT

14  PEDOPHILIA OR PARAPHILIA.  DO YOU HAVE ANY INSIGHT IN THAT

15  REGARD?

16          **MR. MURPHY:**  SOME.  I DIDN'T -- IT IS NOT

17  INTENTIONAL THERE IS NOTHING IN THERE.  I DIDN'T EXCISE IT OR

18  ASK HIM NOT TO ADDRESS THESE THINGS.  LET ME TELL YOU WHAT

19  HAPPENED.

20          I DID AN -- I DID AN EARLY REPORT.  I -- IT IS

21  MENTIONED IN THERE.  I HAD HIM EVALUATED BY A

22  NEUROPSYCHOLOGIST BECAUSE I WAS CONCERNED THAT HE HAD -- THAT

23  HE MIGHT HAVE BRAIN DAMAGE AS A CONSEQUENCE OF HIS TRAUMATIC

24  BIRTH, AND SO FORTH.

25          AND WE DIDN'T -- WE DIDN'T COME OUT WITH ANYTHING

1   THAT WAS PARTICULARLY MEANINGFUL.  IT JUST DIDN'T ANSWER ANY

2   QUESTIONS.

3        SO MY INTENTION WAS THEN TO COME -- I WASN'T REALLY

4   INTENDING TO DO ANOTHER REPORT.

5        THE REPORT THAT THE COURT HAS IS -- IS -- WAS

6   CONTRACTED BECAUSE MR. WRIGHT ASKED ME TO CONSULT WITH AN

7   EXPERT TO DETERMINE WHAT HE NEEDED TO DO TO, SORT OF, GET OVER

8   THINGS -- YOU KNOW, GET OVER THE CONDUCT, THE FEELINGS THAT

9   LED HIM TO COMMIT THIS CLAIM.  AND HE WANTED TO KNOW WHAT HIS

10  PROGNOSIS WAS, AND HOW HE COULD DO IT.  AND WHERE TO DO THOSE

11  THINGS.  SO I CONTRACTED THIS REPORT FOR HIS BENEFIT, NOT FOR

12  THE COURT'S.

13        WHAT CAME THROUGH AND WHEN I -- I THINK IT IS IN THE

14  REPORT AND IT CERTAINLY WAS IN MY CONVERSATIONS WITH THE --

15  WITH THE PSYCHOLOGIST WHO, AS THE COURT KNOWS, WAS A LONG-TIME

16  EMPLOYEE OF THE BUREAU OF PRISONS, NOT SOMEBODY WHO IS

17  ESPECIALLY DEFENSE FRIENDLY.  I SELECTED HIM BECAUSE -- NOT

18  BECAUSE I THOUGHT HE WAS GOING TO WRITE A REPORT THAT WOULD BE

19  GOOD FOR THE REPORT, I WASN'T INTENDING TO GIVE THE COURT THIS

20  REPORT, BUT BECAUSE I THOUGHT HE WOULD GIVE MR. WRIGHT A

21  REALISTIC ASSESSMENT OF WHAT HIS PROGNOSIS WAS AND WHAT HE

22  NEEDED TO DO TO GET BETTER.

23        AND WHAT HE SAID IS THAT HE BELIEVES THAT THE -- HE

24  BELIEVES THAT THERE IS -- THAT MR. WRIGHT HAD SOME SEXUAL

25  ATTRACTION TO CHILDREN, BUT THAT IT IS NOT EXCLUSIVE.  THAT

1   HIS SEXUAL ATTRACTION -- AND WHICH HE THINKS IS ENCOURAGING.

2   HE THINKS HE HAS -- HE HAS AN ATTRACTION -- A SEXUAL

3   ATTRACTION TO ADULTS THAT IS EQUALLY STRONG THAT CAN BE -- AND

4   THAT HE NEEDS TO -- AND THAT THAT IS A GOOD SIGN FOR SORT OF

5   WHAT -- FOR THE SUCCESS RATE OF TREATMENT BECAUSE THEY CAN --

6   YOU KNOW, IT IS MATTER OF REDIRECTING AS OPPOSED TO

7   SUPPRESSING EXCLUSIVELY.

8           HE HAS -- HE HAS SOMEWHAT LONGER EXPLANATIONS FOR

9   WHERE HE THINKS THAT THE ABERRANT SEXUALITY CAME FROM THAT I

10  JUST KIND OF DIDN'T KNOW WHETHER THE COURT WAS GOING TO CARE

11  THAT MUCH ABOUT SO I DIDN'T KIND OF GO INTO IT.  WHAT I

12  THOUGHT ULTIMATELY WOULD BE VALUABLE FOR THE COURT WAS TO KNOW

13  THAT HE -- IN HIS ASSESSMENT MR. WRIGHT IS AN EXCEPTIONALLY

14  GOOD CANDIDATE FOR TREATMENT.  THAT HE IS NOT EXCLUSIVELY --

15  IF HE HAS SOME PEDOPHILIC TENDENCIES IT IS NOT EXCLUSIVELY

16  PEDOPHILIC TENDENCIES.  HE HAS HAD SATISFYING ADULT SEXUAL

17  RELATIONSHIPS.

18          **THE COURT:**  IN THAT REGARD, THEN, YOU WOULD ARGUE

19  THAT WHILE THE REPORT DOESN'T MENTION IT SPECIFICALLY,

20  IMPLICIT IS THE ASSUMPTION THAT MR. WRIGHT SUFFERS FROM

21  PARAPHILIA, WHICH IS CERTAINLY MORE TREATABLE.

22          **MR. MURPHY:**  YEAH, I THINK THAT IS RIGHT.  I THINK

23  THAT IS RIGHT.

24          I MEAN, AS I SAY, THERE IS THIS KIND OF -- I GOT A

25  LONGER EXPLANATION FOR HOW HE THINKS THAT MR. WRIGHT'S

1   EXPERIENCE, YOU KNOW, WAS SORT OF CORRUPTED.  AND MAYBE THE

2   COURT CAN PIECE IT TOGETHER FROM THE MATERIAL BEFORE THE

3   COURT.  THE COURT KNOWS HE HAD A VIOLENT BACKGROUND AND SOME

4   TRAUMATIC EXPERIENCES AND SOME -- BUT, ULTIMATELY, YEAH.  THAT

5   IS RIGHT.

6           I MEAN, WHAT DR. DEFRANCESCO, WHO I WILL -- I HAVE

7   TOLD THE COURT, HE WILL REFUSE TO WRITE REPORTS FOR US IF HE

8   DOESN'T THINK THAT THEY ARE -- IF HE CAN'T STAND BEHIND THEM.

9   HE HAS, AND THAT IS WHY I HIRED HIM.

10           HE BELIEVES THAT MR. WRIGHT SUFFERS FROM SOMETHING

11  THAT IS -- FROM A PARAPHILIA THAT IS -- THAT IS TREATABLE.

12           **THE COURT:**  YOU HAD MENTIONED IN YOUR BRIEFING, AND

13  HERE TODAY, THAT THERE IS NO SEXUAL MISCONDUCT WITH ANY CHILD

14  AT ANY TIME IN THE PAST.

15           **MR. MURPHY:**  THAT'S RIGHT.

16           **THE COURT:**  WHAT ABOUT THE EMAILS AND THE OTHER

17  EXCHANGES WHERE THERE ARE ADMISSIONS TO THE CONTRARY?

18           **MR. MURPHY:**  WELL, THERE ISN'T REALLY ADMISSIONS.

19  THERE IS -- THERE IS -- YOU KNOW, IT -- THERE IS -- THERE IS A

20  LOT OF STUFF IN THE EMAILS WHICH IS REALLY WORRISOME.  BUT

21  THERE ISN'T ANY -- YOU KNOW, HE DOESN'T -- HE DOESN'T -- HE

22  DOESN'T REALLY ADMIT ANYTHING.  HE SAYS THINGS LIKE, YOU KNOW,

23  I HAVE GONE, I HAVE DONE SOME STUFF, BUT NOT -- YOU KNOW,

24  ESSENTIALLY THAT NONE OF IT IS TRUE.  AND NONE OF IT IS TRUE,

25  IN ALL THAT HAS BEEN INVESTIGATED.

```
 1              I MEAN, I UNDERSTAND THESE THINGS ARE HARD TO
 2    INVESTIGATE.  BUT MR. WRIGHT HAS BEEN, I THINK THE COURT CAN
 3    SEE FROM THE PSYCHOLOGIST REPORT, HE -- HE IS -- YOU KNOW, HE
 4    IS EXTREMELY FORTHCOMING ABOUT -- YOU KNOW, ABOUT WHO HE IS
 5    AND WHAT HE FELT AND THIS SORT OF STUFF.  AND HE CATEGORICALLY
 6    DENIES ANY PRIOR MISCONDUCT WITH ANY CHILD BEFORE.
 7              AND WHILE THERE IS -- THERE IS CERTAINLY SOME SMOKE
 8    JUSTIFYING THE -- YOU KNOW, THE GOVERNMENT'S INVESTIGATION OF
 9    THIS CASE, YOU KNOW, THERE IS NOTHING TO SUGGEST THAT OTHER --
10    OTHER THAN THESE EMAILS, WHICH INCLUDE A LOT OF THINGS WHICH
11    ARE CLEARLY NOT TRUE, TO SUGGEST THAT THERE WAS ANY PRIOR
12    MISCONDUCT.
13              I -- I -- I DON'T KNOW WHAT TO SAY, JUDGE.  HE SAYS
14    IT HAS NEVER HAPPENED.  I BELIEVE HIM.  THERE IS -- NO
15    INVESTIGATION HAS EVER TURNED UP ANY EVIDENCE OF THIS.
16              YOU KNOW, HE IS -- WHAT I THINK HAPPENS SOMETIMES IS
17    THAT THEY GET IN THESE -- BECAUSE THERE IS NO -- NOW I AM SORT
18    OF GOING OFF A LITTLE BIT.  BUT I THINK PART OF WHAT HAPPENS
19    IS THAT THERE IS NO WAY TO -- THERE IS NO WAY TO TALK ABOUT --
20    I THINK WHAT HAPPENS IS THEY END UP IN THESE -- HE ENDS UP IN
21    THESE SORT OF -- PEOPLE LIKE HIM ENDED UP IN THESE SORT OF
22    ECHO CHAMBERS WITH FOLK AND THERE IS SOME BLUSTERING.
23              THE COURT:  WHAT ABOUT THE FACEBOOK POSTINGS.  WAS
24    THAT INVESTIGATED, AND DO YOU DISPUTE --
25              MR. MURPHY:  TELL ME AGAIN WHAT THE COURT IS
```

1    REFERRING TO.

2              **THE COURT:**  THE POSTINGS TO PAY PARENTS $150 TO

3    BABYSIT THEIR CHILDREN.

4              **MR. MURPHY:**  I DON'T KNOW ANYTHING ABOUT THAT,

5    JUDGE.

6              **THE COURT:**  CAN YOU SPEAK TO THAT?

7              **MR. HADEN:**  I CAN, YOUR HONOR.  I JUST ASKED ONE OF

8    THE AGENTS WHO IS PRESENT.

9              I JUST -- I THINK MR. MURPHY IS MAKING AN ARGUMENT

10   IN GOOD FAITH.  I HAVE A COUNTER POSITION AND I WANTED TO MAKE

11   SURE I WAS CLEAR WITH THE AGENTS BEFORE I ADDRESSED IT WITH

12   THE COURT.

13             THE AGENTS' POSITION, THE AGENCY, IS THAT THEY

14   REACHED OUT TO CRAIGSLIST AND THEY COULD NOT IDENTIFY THE

15   PERSON THAT HE HAD COMMUNICATED WITH.  THEY ALSO HAD NOT --

16   WERE NOT ABLE TO IDENTIFY ANY PARENTS OF CHILDREN THAT HE MAY

17   OR MAY NOT HAVE BABYSAT.

18             SO IT IS TRUE THAT THEY MADE ATTEMPT TO VERIFY THOSE

19   THINGS, BUT TO ARGUE THAT THEY CONCLUSIVELY DECIDED THAT THERE

20   HAD BEEN NO CONTACT WITH CHILDREN I THINK GOES A LITTLE BIT

21   TOO FAR.

22             **THE COURT:**  THE POSTINGS EXIST?

23             **MR. HADEN:**  THE POSTINGS EXIST, AND CRAIGSLIST WAS

24   UNABLE TO GET THEM TO, YOU KNOW, THE PERSON -- THERE IS AN

25   INDICATION IN THE P.S.R. THAT SOMEONE HAD ACTUALLY RESPONDED

1  AND SAID, WHAT DO YOU WANT TO DO WITH THE CHILD?

2           I THINK THE COURT IS FAMILIAR WITH THAT PARAGRAPH IN

3  THE P.S.R.

4           THEY WERE NOT ABLE TO FIND THAT PERSON OR TO VERIFY

5  THAT.

6           AND IN REGARDS TO THE EXPERIENCE, I WOULD JUST SAY

7  THAT PUFFERY IS ONE THING, BUT MR. WRIGHT SEEMS TO DISPLAY NOT

8  JUST PUFFERY ABOUT HAVING EXPERIENCES WITH CHILDREN BEFORE

9  BUT, FOR EXAMPLE, IN PARAGRAPH 16 OF THE P.S.R. HE INDICATES

10  THAT IF REALLY YOUNG CHILDREN LIKE THIS HAVE NOT BEEN

11  PENETRATED BEFORE THEY TEND TO BLEED A LITTLE THE FIRST TIME,

12  SO WE WILL NEED CREAM AND WIPES.

13           SO HE IS DEMONSTRATING SPECIFIC KNOWLEDGE OF

14  PHYSICAL ACTS AND WHAT THOSE PHYSICAL ACTS WILL DO TO INFANT

15  CHILDREN, AND THE TYPES OF THINGS HE WILL NEED TO RESPOND TO

16  THAT IN THE MOMENT.

17           I THINK THAT THAT IS ALARMING AND SORT OF SHOWS A

18  HIGHER LEVEL OF KNOWLEDGE OF THESE TYPES OF INTERACTIONS.

19           AND, WITH THAT, I WILL RESERVE THE REST OF MY

20  ARGUMENT FOR LATER.

21               **THE COURT:**  ALL RIGHT.

22            **MR. MURPHY:**  JUDGE, I AM SORRY TO INTERRUPT.

23           THIS IS ONE OF THOSE MOMENTS WHERE IT IS UNFORTUNATE

24  THAT MS. SERANO IS NOT PRESENT, BECAUSE I KNOW THAT MR. HADEN

25  IS NOT TRYING TO BREACH THE PLEA AGREEMENT IN THIS CASE.  I

1    TRUST HE ISN'T.  BUT THE -- THAT -- THOSE MATERIALS, WHAT HE

2    IS REFERRING THE COURT TO, IS OF COURSE KNOWN TO MS. SERANO

3    WHEN SHE CAME HERE.  AND THAT MATERIAL, I BELIEVE, COMES FROM

4    READING MATERIAL THAT HE -- THAT WAS FOUND FROM THE INTERNET,

5    SORT OF, JUST NOT FROM PERSONAL EXPERIENCE.

6              **THE COURT:**  I THINK MR. HADEN SAID THAT.

7              **MR. MURPHY:**  OKAY.  SO NOT -- NOT SOMETHING THAT,

8    YOU KNOW, NOT -- I DON'T -- I HEARD MR. HADEN TO BE SUGGESTING

9    THERE WAS EVIDENCE OF HIS PERSONAL, YOU KNOW, MISCONDUCT WITH

10   CHILDREN.  THERE IS NO SUCH EVIDENCE.

11             **THE COURT:**  I DIDN'T INTERPRET IT THAT WAY.

12             **MR. MURPHY:**  VERY GOOD.  THEN I APOLOGIZE.

13             **THE COURT:**  THE FINAL QUESTION I HAVE.  THERE IS

14   REFERENCE IN THE P.S.R. TO THREE CONTACTS WITH THE REPORTING

15   PARTY, THE LAST OF WHICH RESULTED IN THE ARREST.

16             YOU DON'T DISPUTE THE TWO PRIOR CONTACTS?

17             **MR. MURPHY:**  CERTAINLY NOT THE SECOND ONE WHERE

18   HE -- WHERE HE DOESN'T GET ON THE PLANE AND GOES ON.

19             THE PRIOR CONTACT IS -- THAT'S THE ONE WHERE THE

20   ONLY -- THE EVIDENCE OF IT, IT REALLY CONSISTS OF THE

21   TESTIMONY PRIMARILY OF THIS GUY IN TIJUANA WHO HAS SPOKEN TO

22   THE PRESS, HAS NOT SPOKEN TO ME.  I HAVE NOT -- BECAUSE WE

23   RESOLVED THE CASE IN THE WAY THAT WE DID, I REALLY HAVEN'T

24   VETTED ANY OF THAT.

25             I DON'T WANT THE COURT TO BE -- TO BE CONFUSED.  WE

1   -- PART OF WHAT HAPPENED WHEN WE REACHED THIS PLEA AGREEMENT

2   IS THAT I FORFEITED A RIGHT TO CHALLENGE, YOU KNOW, A LOT OF

3   THE EVIDENCE IN HERE.

4           SO I HAVE -- WHEN I FILED MY OBJECTIONS WITH THE

5   COURT I SAID, LOOK, YOU KNOW, THE PROBATION OFFICER ISN'T

6   BASING -- YOU KNOW, THE PROBATION OFFICER HAD MORE EVIDENCE,

7   MORE DISCOVERY THAN I DID WHEN SHE WROTE THIS REPORT.  AND I

8   HAVE -- WE DID NOT LITIGATE THOSE THINGS, I DID NOT

9   INVESTIGATE THEM IN THE WAY THAT I PROBABLY SHOULD HAVE.

10          WHAT IS CLEAR IS THAT NOTHING CAME OF THOSE PRIOR

11  TWO OCCASIONS, TO THE EXTENT THAT THEY HAPPENED.  I DO NOT --

12  I DO NOT ACCEPT THEM WITHOUT -- WITHOUT --

13          **THE COURT:**  THERE IS REFERENCE TO RECORDS, TECS

14  RECORDS, ESSENTIALLY, DOCUMENTING MR. WRIGHT'S ENTRY AT THE

15  SAN YSIDRO PORT OF ENTRY IN JULY OF 2014.

16          **MR. MURPHY:**  YES, I BELIEVE THOSE EXIST.  I BELIEVE

17  HE DID GO TO MEXICO ON THOSE DAYS.

18          **THE COURT:**  OKAY, THANK YOU.

19          MR. WRIGHT, DO YOU WISH TO SAY ANYTHING AT THIS

20  TIME?

21          **MR. MURPHY:**  YOUR HONOR, I HAVE SPOKEN WITH MR.

22  WRIGHT ABOUT THIS, AND GIVEN THE REALITY THAT HIS MOTHER IS

23  HERE AND THE PRESS IS HERE, HE HAS ELECTED TO LET ME SPEAK FOR

24  HIM, AS I JUST DID.

25          **THE COURT:**  ALL RIGHT.  OKAY.  THANK YOU.

1          MR. HADEN.

2          **MR. HADEN:**  YOUR HONOR, I WANT TO START WITH TWO

3    PRELIMINARY THINGS, AND THEN REQUEST YOUR HELP IF THAT IS ALL

4    RIGHT.

5          I WANT TO MAKE THE FIRST COMMENT.  I COMPLETELY

6    RESPECT -- AND I THINK EVERYONE WHO IS FAMILIAR WITH FEDERAL

7    PRACTICE IN THIS DISTRICT -- I UNDERSTAND THE REFERENCES TO

8    MS. SERANO, AND OBVIOUSLY IT IS HER CASE.  I JUST WANT TO MAKE

9    IT REALLY CLEAR, I DON'T TAKE ANY OFFENSE TO THAT BECAUSE THAT

10   IS THE REALITY.  BUT I WANT TO MAKE SURE THE COURT KNOWS, I AM

11   NOT HERE BY HAPPENSTANCE.

12         I CO-TEACH HUMAN TRAFFICKING AND CHILD EXPLOITATION

13   WITH MS. SERANO AT USD SCHOOL OF LAW.  I WAS WITH MS. SERANO

14   WHEN SHE GOT THE PHONE CALL THAT MR. WRIGHT HAD GOTTEN OFF THE

15   PLANE.  I HAVE KNOWN ABOUT THIS CASE FROM THE BEGINNING.

16         AND SHE IS IN TRIAL NEXT DOOR AND ASKED ME TO COVER

17   BECAUSE I AM THE MOST FAMILIAR WITH THIS CASE, OTHER THAN HER.

18   BUT I AM NOT AS FAMILIAR AS SHE IS, BUT I WANTED TO MAKE SURE

19   THAT IS CLEAR.  THAT I AM NOT THE CALENDAR ASSISTANT, I AM NOT

20   HERE JUST RANDOMLY.

21         THEN THE NEXT THING I WANT TO TALK ABOUT, YOUR

22   HONOR, IS, MR. MURPHY RIGHTFULLY HAS RAISED THE ISSUE, THERE

23   IS VERY GOOD NINTH CIRCUIT PRECEDENT THAT WHEN THE COURT GIVES

24   A TENTATIVE THAT IT IS GOING TO BE SENTENCING WITHIN THE

25   RANGE, AND I AM RECOMMENDING THE LOW END, I SHOULD BE QUIET,

1   BECAUSE ANYTHING ELSE CAN BE DEEMED AS ATTEMPTING TO INFLAME

2   THE COURT.

3          AND I WANT TO MAKE SURE THAT IT IS CLEAR THAT I AM

4   NOT DOING THAT.  THE COURT HAS ASKED QUESTIONS, AND AS AN

5   OFFICER OF THE COURT I WANT TO MAKE SURE THAT THE INFORMATION

6   THAT THE COURT HAS IS CLEAR.  AND I WOULD LIKE TO MAKE

7   ARGUMENTS RELATED TO WHY WE THINK 168 MONTHS IS SUFFICIENT BUT

8   NOT GREATER THAN NECESSARY, BUT I DON'T WANT TO DO THAT IF THE

9   COURT DOESN'T NEED ANY ADDITIONAL ARGUMENT FROM THE UNITED

10  STATES.

11        **THE COURT:**  I WOULD LIKE TO HEAR THAT ARGUMENT AS TO

12  WHY 168 IS SUFFICIENT BUT NOT GREATER THAN NECESSARY.

13        **MR. HADEN:**  THANK YOU, YOUR HONOR.

14        I THINK THE NATURE AND CIRCUMSTANCES OF THE OFFENSE,

15  FOR A VARIETY OF PRACTICAL REASONS AND CIVILITY, WE HAVEN'T

16  COMPLETELY DISCUSSED.  I KNOW THE COURT IS EXTREMELY FAMILIAR

17  WITH THEM.

18        BUT I THINK WHEN YOU LOOK AT THIS CASE, WHAT IS

19  EXTRAORDINARY IS THE BALANCE THAT WE HAVE TO LOOK AT.  YOU

20  KNOW, THE DARKEST OF DEMONS DON'T ALWAYS COME TO YOU AT NIGHT

21  WITH A HANDGUN AS YOU TRY TO GET MONEY OUT OF THE ATM.  YOU

22  KNOW, THE DARKEST OF DEMONS MIGHT ACTUALLY COME TO YOU AS

23  SOMEONE WHO IS IN SEMINARY SCHOOL WHO CAN'T SEE VERY WELL, AND

24  CONSTANTLY PROFESSES A DESIRE TO GO TO CHURCH AND HELP WITH

25  YOUR CHILDREN.  HE IS AN EXTRAORDINARILY SCARY PERSON FROM ONE

1    PERSPECTIVE BECAUSE HE COMES, LITERALLY, AS A SHEEP, YOU KNOW,
2    AS A WOLF IN SHEEP'S CLOTHING.
3            AND DESPITE ALL OF HIS PHYSICAL STRUGGLES, AND
4    DESPITE THE DAILY PAIN THAT MR. MURPHY DESCRIBES, THE EMPATHY
5    THAT WE ARE HEARING ABOUT TODAY WAS NOT AT ALL ON HIS MIND
6    WHEN HE SPECIFICALLY -- SPECIFICALLY -- WANTED CHILDREN OF THE
7    AGE THAT WERE NONVERBAL SO THEY COULD NOT REPORT THEIR ABUSE,
8    WHICH GOES TO RECIDIVISM, BECAUSE YOU CAN'T GET CAUGHT.
9            AND HE WANTED TO INFLICT PAIN.  AND HE WANTED TO
10   INFLICT PAIN THAT COULD CAUSE THE CHILDREN TO BLEED AND NEED
11   PAIN MEDICATION, WHICH WAS WHAT WAS IN HIS BAG WHEN HE GOT OFF
12   THE PLANE.
13           **MR. MURPHY:**  YOUR HONOR, I DON'T KNOW THAT THIS IS
14   AN ARGUMENT FOR THE LOW END OF THE ADVISORY GUIDELINE RANGE.
15           **THE COURT:**  I KNOW THAT MR. HADEN WILL TIE IT IN.
16   AND I RESPECT HIS VIEW, SO I WOULD LIKE TO HEAR IT.
17           **MR. HADEN:**  IT IS A BALANCE, YOUR HONOR.  AND I AM
18   GETTING TO THE POINT THAT I KNOW MR. MURPHY WANTS ME TO GET
19   TO.
20           AND IT WAS A SOPHISTICATED ATTEMPT, AND THERE WAS A
21   PRIOR ATTEMPT.  SO YOU HAVE THAT CONDUCT.  YOU HAVE THESE
22   EXTREME MEASURES.  THE DIFFICULTY OF SOMEONE TO TRAVEL AS FAR
23   AS HE DID, WITH THE INTENTIONS THAT HE DID.
24           AND THEN, ON THE OTHER HAND, YOU HAVE HIS PERSONAL
25   HISTORY AND CHARACTERISTICS AND HIS REALITY THAT MR. MURPHY

1   HAS VERY ADEQUATELY EXPLAINED.  AND THIS IS THE PART WHERE I
2   FEEL LIKE WE ARE JUSTIFIED, AND I AM HELPING SUPPORT THE 168
3   MONTHS, AND WHY I DON'T THINK ANYTHING LARGER THAT IS
4   NECESSARY.

5           I THINK MR. MURPHY IS RIGHT IN THAT THESE PHYSICAL
6   CONDITIONS THAT MR. WRIGHT PERSONALLY AND UNIQUELY POSSESSES
7   DO MAKE HIS CUSTODY HARDER, WILL MAKE HIS CUSTODY HARDER.  I
8   THINK THAT MR. MURPHY'S COMMENTS ABOUT, YOU KNOW,
9   CONTEMPLATION AND REHABILITATION AND CLASSES IS CORRECT.  HE
10  WON'T HAVE THE SAME CUSTODIAL EXPERIENCE AS THE AVERAGE PERSON
11  THAT COMES BEFORE THE COURT.

12          AND I THINK THAT IT WAS THE BALANCE OF THOSE TWO,
13  THESE TREMENDOUSLY POWERFUL AND SCARY AND SHOCKING FACTS ON
14  THE ONE HAND, WITH THE PERSONAL HISTORY AND CHARACTERISTICS OF
15  MR. WRIGHT ON THE OTHER HAND, THAT MS. SERANO WEIGHED.  AND
16  SHE CONCLUDED THAT THE LOW END OF THIS GUIDELINE RANGE, AS
17  CALCULATED PURSUANT TO THE AGREEMENT, WAS THE APPROPRIATE AND
18  SUFFICIENT BUT NOT GREATER THAN NECESSARY SENTENCE.

19          THERE ARE NOT MANY PEOPLE WHO COME BEFORE THE COURT
20  WHO HAVE THESE TYPES OF PHYSICAL AILMENTS.  HIS ACCESS TO
21  CHILDREN WAS OBVIOUSLY A STRUGGLE BEFORE, IT WILL BE EVEN A
22  LARGER STRUGGLE WHEN HE GETS OUT BECAUSE OF HIS ABILITY TO
23  ACCESS THE INTERNET, HIS FURTHER IMPAIRED SIGHT, AND OTHER,
24  YOU KNOW, INHERENT LIMITATIONS.  SO I THINK IT IS THAT
25  BALANCE, WHICH IS WHY WE HAVE THIS DEAL.

1          AND UNLESS THE COURT HAD FURTHER QUESTIONS, THAT IS
2    WHAT WE WOULD SUBMIT TO THE COURT IS THAT THAT IS SUFFICIENT
3    BUT NOT GREATER THAN NECESSARY FOR THIS EXTRAORDINARY AND
4    SHOCKING SET OF FACTS.
5          **THE COURT:**  WHAT ABOUT REHABILITATION, DO YOU HAVE
6    ANY INSIGHT ON THAT?
7          **MR. HADEN:**  YOUR HONOR, I THINK I WOULD
8    RESPECTFULLY -- WELL, I WOULD SAY A COUPLE OF THINGS.
9          I THINK THE ARTICLE THAT MR. MURPHY CITED, IT IS
10   WELL-KNOWN TO ME, IT IS NOT A BLANKET PERCENTAGE THOUGH.  THIS
11   IS WIDELY DEBATED.  RECIDIVISM RATES, IN THIS CONTEXT, THE
12   REPORT INDICATES THAT IT IS QUALIFIED AND IT IS NOT PERFECT.
13   AND I WOULD SUBMIT TO THE COURT THAT IT IS ESPECIALLY
14   DIFFICULT TO CALCULATE BECAUSE IT IS NOT LIKE SOMEONE WHO DOES
15   METHAMPHETAMINE AND THEN GETS PICKED UP AGAIN OR HAS TO GO TO
16   REHAB AGAIN.  THIS IS A CRIME THAT IS NOTORIOUSLY
17   UNDERREPORTED.  ABUSES AGAINST CHILDREN, DON'T GET REPORTED AT
18   THE SAME LEVEL AS OTHER CRIMES BECAUSE, FOR ONE, THE CHILDREN
19   IF THEY ARE ONE, TWO, THREE, FOUR YEARS OLD, THEY ARE
20   NONVERBAL AND CAN'T REPORT THAT.
21         SO I HOPE THAT MR. MURPHY IS RIGHT.  I HOPE THAT MR.
22   WRIGHT IS DEDICATED TO HIS REHABILITATION, AND HAS SUCCESS FOR
23   BOTH HIMSELF AND OUR SOCIETY WHEN HE GETS OUT.
24         I AM SLIGHTLY MORE PESSIMISTIC ABOUT THE CHANCES OF
25   THAT SUCCESS, GIVEN THE DEEP-SEATED NATURE OF SOME OF THESE

1   INTERESTS THAT HE PURPORTS TO HAVE.  AND THAT THE GENERAL

2   RECIDIVISM RATE, I DON'T THINK IS ACCURATELY KNOWN BY ANYONE.

3            I THINK IT IS CERTAINLY HIGHER THAN WHAT WE ALL

4   THINK IT IS BECAUSE WE JUST DON'T CATCH THEM.  AND WHEN WE

5   CATCH THEM, IT IS HARDER TO CATCH THEM AGAIN BECAUSE THEY ARE

6   AWARE OF HOW THEY GOT CAUGHT.  THEY UNDERSTAND ALL OF THOSE

7   THINGS IN PLAY.

8            **THE COURT:**  DO YOU HAVE ANY INFORMATION WITH RESPECT

9   TO ANY DIAGNOSE OF PEDOPHILIA OR PARAPHILIA?

10           **MR. HADEN:**  NO, YOUR HONOR.  WE HAVE ONLY WHAT MR.

11  MURPHY PROVIDED.

12           **THE COURT:**  IS YOUR BELIEF CONSISTENT WITH WHAT MR.

13  MURPHY ARGUED, THAT THESE FACTS AND THE INFORMATION PROVIDED

14  BY THE PSYCHOLOGIST ARE MORE CONSISTENT WITH PARAPHILIA,

15  WHICH IS MORE AMENABLE TO TREATMENT THAN PEDOPHILIA,

16  CERTAINLY?

17           **MR. HADEN:**  YOUR HONOR, I DON'T FEEL EDUCATED ENOUGH

18  TO MAKE AN ASSESSMENT IN THAT REGARD.  I AM SLIGHTLY -- I WILL

19  JUST LEAVE IT AT THAT.

20           I THINK THAT AS LONG AS WE ARE ACKNOWLEDGING THAT

21  THERE IS A SIGNIFICANT SEXUAL INTEREST IN CHILDREN, YOU KNOW,

22  I DON'T KNOW THAT I AM IN A POSITION TO MAKE A DEFINITIVE

23  STATEMENT REGARDING THE ONE CATEGORIZATION OR ANOTHER.

24           **THE COURT:**  ALL RIGHT.

25           **MR. MURPHY:**  JUDGE, MY LAST POINT IS, I THINK MR.

1  HADEN'S POINT ABOUT THE LACK OF REPORTING IS PROBABLY TRUE IN
2  TERMS OF ASSESSING RECIDIVISM.
3          I WILL SAY THAT I CHOSE A NUMBER FROM THAT REPORT, A
4  DEPARTMENT OF JUSTICE REPORT, SO NOT, YOU KNOW, SOME WHACK
5  JOB, YOU KNOW, DEFENSE FRIENDLY ORGANIZATION.  THAT WAS NOT
6  THE MOST FAVORABLE STATISTIC I COULD HAVE FOUND.
7          IN FACT, THE RECIDIVISM RATE FOR VIOLENT SEXUAL
8  OFFENDERS WHICH IS, YOU KNOW, NOT -- NOT THE STATISTIC I
9  CHOSE, IS SOMETHING LIKE SIX AND A HALF PERCENT, WHICH
10 IS BETTER.  I MEAN, I CHOSE A NUMBER OF 11 PERCENTAGE BECAUSE
11 THERE IS NO EVIDENCE OF VIOLENCE AND SO FORTH.
12         SO I AGREE WITH MR. HADEN THAT THIS IS ALL
13 ACTUARIAL.  DOESN'T TAKE INTO ACCOUNT THE PARTICULAR
14 DEFENDANT, THE PARTICULAR DIFFICULTIES THAT HE WILL HAVE.
15         BUT I WOULD NOTE THAT THE -- TO THE EXTENT THERE IS
16 ANY EVIDENCE THAT THE ACTUARIAL STUFF FAVORS THE DEFENSE,
17 THERE IS ALSO EVIDENCE THAT IT -- YOU KNOW, THAT IT IS TOO
18 HIGH, THAT THE NUMBERS I GAVE YOU WERE -- WERE TOO HIGH.
19         **THE COURT:**  THANK YOU.  OKAY.  I APPRECIATE THE
20 DISCUSSION, IT IS HELPFUL.
21         I WOULD START WITH A GUIDELINE CALCULATION.  THE
22 BASE OFFENSE LEVEL IS 28 UNDER SECTION 2G1.3.  THERE IS AN
23 UPWARD ADJUSTMENT OF EIGHT LEVELS UNDER SECTION 2G1.3B5 GIVEN
24 CHILDREN UNDER THE AGE OF 12.  THERE IS A FURTHER UPWARD
25 ADJUSTMENT OF TWO LEVELS UNDER SECTION 2G2.2B6, GIVEN THE USE

1   OF A COMPUTER.  AND THERE IS A DOWNWARD ADJUSTMENT OF THREE

2   LEVELS UNDER SECTION 3E1.1B GIVEN THE ACCEPTANCE OF

3   RESPONSIBILITY AND THE GOVERNMENT'S MOTION THEREON.

4          THAT PROVIDES A TOTAL OFFENSE LEVEL OF 35.  THE

5   CRIMINAL HISTORY SCORE IS ZERO, THE CATEGORY IS I.  THE

6   GUIDELINE RANGE IS 168 TO 210 MONTHS.

7          AND THAT IS THROUGH THE BENEFIT OF A PLEA AGREEMENT,

8   WHICH I FIND TO BE A GOOD AND PRINCIPLED PLEA AGREEMENT FOR

9   THE REASONS THAT HAVE BEEN DISCUSSED BY BOTH SIDES HERE TODAY.

10         I WOULD TURN TO THE 3553 FACTORS, AND DISCUSS

11  INITIALLY THE NATURE AND THE CIRCUMSTANCES OF THE CRIME, WHICH

12  ARE DEEPLY DISTURBING.  AND THE FACTS OF THE CRIME, WHICH ARE

13  NOT IN DISPUTE, ARE MOST SIGNIFICANT AND MOST DESERVING OF

14  PUNISHMENT FOR PUNISHMENT'S SAKE ALONE.

15         THIS IS AN ATTEMPT.  AND I THINK THAT CERTAINLY

16  FACTORS NOT ONLY INTO THE GUIDELINE RANGE BUT THE GOVERNMENT'S

17  RECOMMENDATION.  IT IS NOT A COMPLETED CRIME, FORTUNATELY, IN

18  THE SENSE THAT THERE IS NOT AN ACTUAL VICTIM.  IT IS A

19  COMPLETED CRIME IN THE SENSE THAT IT IS AN ATTEMPT.

20         SO WHAT WE KNOW, THROUGH THE ATTEMPT CHARGE, IS ONLY

21  WHAT YOU ARE THINKING.  AND HERE, AS ATTEMPTS GO, THE SET OF

22  CIRCUMSTANCES HERE ARE REMARKABLE BECAUSE THEY ARE ABSOLUTELY

23  REVEALING AS TO WHAT'S GOING ON IN YOUR MIND.

24         THERE ARE SOME CASES WHERE IT IS NOT COMPLETELY

25  CLEAR WHAT A PERSON IS INTENDING TO DO, AND THAT'S WHY

1 ATTEMPTS CAN SO OFTENTIMES BE DIFFICULT TO PROVE; BUT HERE
2 THERE IS NO UNCERTAINTY ABOUT THAT.  THE INTENTIONS ARE
3 ABSOLUTELY CLEAR AND THEY ARE MARKED IN A NUMBER OF DIFFERENT
4 WAYS.

5          THE FACTUAL BASIS FOCUSES ON THE DATE OF INCIDENT
6 AND THE DATE OF YOUR ARREST, JANUARY 29, 2016, HERE AT THE
7 AIRPORT IN SAN DIEGO.  BUT LEADING UP TO THAT WAS THE EXCHANGE
8 YOU HAD WITH THE UNDERCOVER AGENT, WHOM YOU BELIEVED TO BE A
9 PERSON IN MEXICO WHO COULD PROVIDE CHILDREN BETWEEN THE AGES
10 OF ONE AND FOUR FOR PURPOSES OF SEXUAL GRATIFICATION AND
11 ABUSE.

12          THE DESCRIPTION THAT IS PROVIDED IS GRAPHIC, IT IS
13 DETAILED.  IT IS VERY EXPLICIT AS TO WHAT YOUR INTERESTS ARE
14 AND WHAT YOU ARE PURSUING.  MR. HADEN TOUCHED ON THOSE.  AND
15 THERE IS SIMPLY NO DISPUTE THAT THAT IS THE NATURE OF THE
16 EXCHANGE AND THE NATURE OF THE TARGET.

17          YOU FLEW OUT.  YOU HAD IN YOUR DUFFEL BAG ALL OF THE
18 ITEMS THAT ARE COMPLETELY CONSISTENT WITH THIS INTENDED
19 ACTIVITY; INCLUDING LUBRICANT, BABY CLOTHES, BABY TOYS, ALL OF
20 THESE THINGS.  CASH, AND A FAIRLY SIGNIFICANT AMOUNT OF CASH,
21 TO MAKE PAYMENT.  AND AN INVITATION TO FILM THIS ACTIVITY AND
22 TO DISSEMINATE THE FILMING THEREOF.

23          SO IT IS AN INCREDIBLY, DEEPLY DISTURBING SET OF
24 CIRCUMSTANCES THAT CAN'T ADEQUATELY BE STATED AS FAR AS THE
25 DEVASTATION THAT WOULD OCCUR IF THIS ACTUALLY CAME TO

1   FRUITION.  NOT ONLY THE PERMANENT INFLICTION AND HARM ON

2   CHILDREN, BUT THE IDEA OF FILMING AND DISSEMINATING TO THE

3   PUBLIC FOR FURTHER CONSUMPTION AND ABUSE OF THESE INFANTS.

4          SO THE NATURE AND THE CIRCUMSTANCE OF THE CRIME,

5   THAT PARTICULAR EVENT OF JANUARY 29 AND THE EVENTS LEADING UP

6   TO IT, ARE REMARKABLE IN MANY WAYS, HIGHLY UNUSUAL.  AND MOST

7   DESERVING OF SIGNIFICANT PUNISHMENT FOR PUNISHMENT'S SAKE

8   ALONE.

9          THERE IS ALSO A DOCUMENTED HISTORY LEADING UP TO

10   THIS ARREST.  THERE ARE TWO OTHER INCIDENTS.  JULY OF 2014

11   THERE WAS CONTACT WITH THE REPORTING PARTY IN MEXICO.

12   ARRANGEMENTS MADE, IN YOUR MIND, TO PURCHASE INFANTS, AGAIN

13   AGES ONE TO FOUR.  A FLIGHT OUT HERE.  A PAYMENT TO THE

14   REPORTING PARTY.  AND THEN THE REPORTING PARTY ABANDONED, AND

15   SO THE ACT COULD NOT BE COMPLETED BECAUSE THE REPORTING PARTY

16   TOOK YOUR MONEY AND LEFT.

17          THEREAFTER, THERE WAS AN INCIDENT IN DECEMBER OF

18   2015.  SO THIS IS THE SECOND EPISODE WHERE ARRANGEMENTS WERE

19   MADE TO DO THE SAME ACTIVITY THROUGH THE SAME REPORTING PARTY.

20   AND I ACCEPT THE REPRESENTATION THAT YOU -- YOU -- ABANDONED

21   THAT EFFORT.  AND THAT YOU ACTUALLY ATTEMPTED SUICIDE, WHICH

22   SHOWS GREAT REMORSE AND CERTAINLY AN INTERNAL CONFLICT THAT

23   YOU HAVE BEEN STRUGGLING WITH.  THAT IS REVEALING, AND THAT IS

24   A MITIGATING FACTOR IN THAT YOU, YOURSELF, ABANDONED THAT

25   SECOND ATTEMPT.

1          HOWEVER, FOR WHATEVER REASON, YOU CONTINUED TO
2   PURSUE THIS ACTIVITY.  AND DESPITE AN ATTEMPTED SUICIDE,
3   DESPITE THE REMORSE AND MISGIVINGS, YOU REACHED OUT AGAIN, AND
4   THAT LED TO THIS PRESENT INCIDENT.

5          SO THERE ARE THESE THREE EVENTS THAT ARE SIGNIFICANT
6   IN CLEARLY ESTABLISHING WHAT IS GOING ON IN YOUR MIND, THE
7   INTENDED ACTIVITY, AND THE REALITY OF WHAT YOU WOULD HAVE DONE
8   BUT FOR AN UNDERCOVER AGENT BEING INVOLVED IN THE ARREST AND
9   APPREHENSION HERE.

10          THERE IS ALSO THE FACEBOOK POSTING WHERE YOU HAD
11   ADVERTISED TO PAY PARENTS $150 TO BABYSIT THEIR CHILDREN.
12   AGAIN, ANOTHER CONCRETE EXAMPLE OF CROSSING THIS GREAT DIVIDE
13   FROM THOUGHT TO ACTION, AND PUTTING INTO PLACE THE OPPORTUNITY
14   FOR YOU TO ACT OUT AND SEXUALLY ABUSE INFANTS.

15          THERE IS ALSO EMAILS, INFORMATION FOUND ON YOUR
16   COMPUTER, WHERE ADMISSIONS ARE MADE THAT ARE ATTRIBUTED TO YOU
17   INDICATING PRIOR SEXUAL CONTACT WITH CHILDREN.

18          THERE IS NO EVIDENCE OF ANY PRIOR SEXUAL ABUSE OF
19   CHILDREN, AND THE GOVERNMENT HAS NOT MADE THAT ARGUMENT, AND
20   THAT IS ONE OF THE REASONS WHY THEY ARE RECOMMENDING THE LOW
21   END.  BUT THOSE ARE YOUR WORDS.  AND WHETHER THAT HAS EVER
22   HAPPENED OR NOT, ONLY YOU KNOW.

23          AND I MENTION THOSE EMAIL EXCHANGES SIMPLY BECAUSE
24   IT IS FURTHER INDICATIVE OF YOUR INTENT IN THIS CASE, AND THE
25   POINT YOU HAD REACHED WHERE SIMPLY VIEWING CHILD PORNOGRAPHY

1    OR THINGS OF THAT NATURE WERE NOT SUFFICIENT.

2         THE PSYCHOLOGICAL EVALUATION INDICATES, WITHOUT

3    SAYING IT EXPLICITLY, BUT IT INDICATES IMPLICITLY, PARAPHILIA

4    WHERE, ACCEPTING THE PSYCHOLOGIST'S EVALUATION, THERE IS AN

5    INTEREST NOT ONLY IN ADULT SEXUAL PARTNERS BUT A DEEP INTEREST

6    IN CHILDREN.

7         BUT THE FACT THAT THE INFORMATION IS CONSISTENT WITH

8    PARAPHILIA AND CONSISTENT WITH THE PSYCHOLOGIST'S OPINION THAT

9    REHABILITATION IS A VERY REAL POSSIBILITY, SPEAKS TO A MORE

10   MITIGATED SENTENCE IN THAT, I THINK MR. MURPHY SAID IT WELL,

11   THAT PARAPHILIA CAN BE A PROCESS OF REDIRECTING AS OPPOSED TO

12   JUST SUPPRESSING A DESIRE THAT IS SOLELY FOCUSED ON CHILDREN.

13   PEDOPHILIA IS AN ENTIRELY DIFFERENT DIAGNOSIS.  AND THERE IS

14   NO EVIDENCE BEFORE THE COURT THAT PEDOPHILIA IS AT ISSUE, IT

15   IS ALL CONSISTENT WITH PARAPHILIA.

16        THESE ARE THE NATURE AND THE CIRCUMSTANCES OF THE

17   CRIME, AND THEY ARE, SIMPLY STATED, HORRIFIC.  AND THEY ARE

18   MOST DESERVING OF PUNISHMENT FOR PUNISHMENT'S SAKE ALONE, AND

19   MOST DESERVING OF IMPOSING A SENTENCE THAT WILL PROTECT

20   SOCIETY.

21        THE LAW, AS YOU WELL KNOW, IS FASHIONED, THE

22   CRIMINAL LAW, IN PROTECTING VICTIMS, AND THE MOST PROTECTED OF

23   VICTIMS ARE THE CHILDREN AND ELDERLY, AND OF THOSE TWO

24   CHILDREN ARE THE MOST PRECIOUS.  AND THESE ARE NOT ONLY

25   CHILDREN, THESE ARE INFANTS, ONE TO FOUR YEARS OF AGE, SO

1    THESE ARE THE MOST VULNERABLE OF SOCIETY, AND HERE AGAIN THERE

2    HAS TO BE A SENTENCE THAT FOCUSES ON PUNISHMENT AND DETERRENCE

3    AND PROTECTION.

4            THE HISTORY AND CHARACTERISTICS ATTRIBUTED TO YOU,

5    OUTSIDE OF THIS AREA, ARE OVERWHELMINGLY POSITIVE.  I READ

6    WITH GREAT INTEREST THE LETTER FROM YOUR MOTHER AND YOUR

7    DOCTOR, FAMILY DOCTOR, DR. EVANS.  AND I APPRECIATE THEIR BOTH

8    BEING HERE.

9            YOU ENJOY A GREAT DEAL OF FAMILY SUPPORT, AND YOU

10   ARE VERY FORTUNATE AND BLESSED TO HAVE THAT.

11           I ACCEPT THE REPRESENTATIONS THAT YOU HAVE A DEEP

12   AND ABIDING FAITH, YOU FIND GREAT SOLACE IN CHURCH.  AND I

13   ACCEPT THE REPRESENTATION THAT YOU WERE ATTENDING CHURCH AND

14   INTERESTED IN THE PRIESTHOOD FOR ALL OF THE RIGHT REASONS.

15           ALL OF THE INFORMATION IS CONSISTENT WITH THE FACT

16   THAT FROM A VERY YOUNG AGE YOU HAVE BEEN A DEEPLY FAITHFUL,

17   KIND AND CONSIDERATE PERSON, AND MOTIVATED TO PURSUE THE

18   PRIESTHOOD.  AND YOU WERE CURRENTLY ATTENDING PONTIFICAL

19   COLLEGE STUDYING THEOLOGY.  AND I FIND THAT THAT IS ALL

20   CONSISTENT WITH A DEEP, ABIDING AND GENUINE FAITH.

21           THOSE ARE SIGNIFICANT MITIGATING FACTORS.

22           YOUR MEDICAL HEALTH AND ALL OF THE DISABILITIES THAT

23   YOU HAVE CONTENDED WITH FROM BIRTH, AND DONE SO IN A

24   REMARKABLE WAY, ARE VERY SIGNIFICANT MITIGANTS.  AS YOUR

25   MOTHER STATED, YOU WEREN'T SUPPOSED TO TALK OR WALK, YOU

1   WEREN'T SUPPOSED TO SURVIVE, BUT YOU DID.  AND YOU HAVE
2   GRADUATED AND YOU HAVE MOVED ON TO STUDY THEOLOGY, AND YOU HAD
3   ASPIRATIONS OF PURSUING THE PRIESTHOOD.  THAT'S VERY UNUSUAL,
4   AND THOSE ARE VERY, VERY SIGNIFICANT MITIGATING FACTORS.  AND
5   YOU ARE TO BE CREDITED FOR THAT SUCCESS IN YOUR LIFE.

6          FOR WHATEVER REASON, WE DON'T KNOW, AND DR.
7   DEFRANCESCO INDICATED WE DON'T KNOW, HE HAS THEORIES.  BUT FOR
8   WHATEVER REASON YOU HAVE REACHED A POINT IN YOUR LIFE, FOR THE
9   PAST SEVERAL YEARS YOU HAVE BEEN PURSUING CHILDREN.  AND SO
10  DESPITE ALL OF THESE ENORMOUS MITIGANTS, THERE IS AN EXTREME
11  PREDATORY SIDE.

12         AND I DON'T DISAGREE WITH MR. HADEN'S
13  CHARACTERIZATION.  THE FACT THAT ONE BRINGS TO THE
14  PRESENTATION A PERSON WHO APPEARS SO GENUINE AND KIND,
15  SUFFERING FROM DISABILITIES BUT OVERCOMING THOSE DISABILITIES,
16  BUT YET CAN BE PREPARED TO VICTIMIZE SOCIETY'S MOST
17  VULNERABLE, IS THE MOST DISTURBING FORM OF PREDATORY BEHAVIOR.
18  AND THAT HAS TO BE ADDRESSED IN A MEANINGFUL WAY IN THIS
19  SENTENCE.

20         THERE IS OBVIOUSLY A NEED, AS I HAVE INDICATED, TO
21  IMPOSE A SENTENCE THAT WILL PUNISH FOR THE ACTIVITY, DETER MR.
22  WRIGHT AND OTHERS, PROTECT SOCIETY AND CHILDREN, AND INFANTS
23  IN PARTICULAR.  ALSO, A SENTENCE THAT WILL PROMOTE RESPECT FOR
24  LAW, AND DETERRENCE FOR OTHERS FROM A SYSTEMIC STANDPOINT.
25  AND CERTAINLY THE NEED TO FOCUS ON REHABILITATION, BECAUSE

1   ULTIMATELY SOME DAY YOU WILL BE RELEASED AND YOU WILL STILL BE

2   YOUNG.  AND THE HOPE HERE, OBVIOUSLY, IS THAT YOU WILL BE

3   REHABILITATED.

4           A CONCERN, OBVIOUSLY, IS YOU WILL STILL BE YOUNG,

5   AND IF YOU ARE NOT REHABILITATED THERE ARE MANY POTENTIAL

6   VICTIMS.  AND THE SENTENCE HERE WILL HOPEFULLY ADDRESS THESE

7   COMPETING CONCERNS.

8           FOR ALL OF THE REASONS -- THE PLEA AGREEMENT, I

9   INDICATED, IS A PRINCIPLED AND FAIR ONE WITH A GUIDELINE RANGE

10  OF 168 TO 210 MONTHS.  AND I HAD INDICATED THAT I WAS PREPARED

11  TO STAY WITHIN THE PLEA AGREEMENT, AND I AM.

12          I WOULD START BY INDICATING THAT, FOR ALL OF THESE

13  REASONS, THE HIGH END AT 210 MONTHS WOULD BE A PRINCIPLED

14  SENTENCE IN MANY WAYS, SUFFICIENT BUT NOT GREATER THAN

15  NECESSARY IN MANY WAYS.

16          I WOULD CONSIDER THE MITIGATING CIRCUMSTANCES THAT I

17  HAVE SET OUT HERE TODAY.  AND, ULTIMATELY, I AM GOING TO

18  IMPOSE A SENTENCE AT THE MID RANGE AT 188 MONTHS.  I THINK

19  THAT IS WHERE THE MITIGATION COMES, FROM THE HIGH END TO THE

20  MID RANGE.

21          ULTIMATELY I DO BELIEVE THAT A SENTENCE AT 188

22  MONTHS IS THE RIGHT, JUST AND FAIR SENTENCE, SUFFICIENT BUT

23  NOT GREATER THAN NECESSARY TO ADDRESS THE 3553 FACTORS.

24          FOR ALL OF THESE REASONS IT WOULD BE THE JUDGMENT

25  AND SENTENCE OF THE COURT THAT YOU BE, AND HEREBY ARE,

1    SENTENCED TO A TERM OF CUSTODY WITH THE BUREAU OF PRISONS AT

2    188 MONTHS.

3            THE STATUTORY FINE WOULD BE WAIVED.  A SPECIAL

4    ASSESSMENT OF $100 WILL BE IMPOSED.

5            SUPERVISED RELEASE I AM GOING TO FIX AT LIFE.  AND

6    YOU WILL HAVE AN OPPORTUNITY TO PETITION THE COURT AT AN

7    APPROPRIATE TIME, IF YOU AND YOUR COUNSEL BELIEVE IT IS

8    PRUDENT, AND TO SEEK THE GUIDANCE OF THE PROBATION OFFICER.

9    BUT, AS I INDICATED, WHEN YOU ARE RELEASED FROM CUSTODY YOU

10   WILL STILL BE A FAIRLY YOUNG MAN, AND IT IS EXTREMELY

11   IMPORTANT THAT THE GOALS OF REHABILITATION AND CONTINUED

12   OVERSIGHT BE IN PLACE.  AND SUPERVISED RELEASE IS A VERY

13   SIGNIFICANT COMPONENT OF THAT.  IN MY ESTIMATION, LIFETIME

14   SUPERVISION IS APPROPRIATE.

15           IT MAY BE, MANY YEARS AFTER YOUR RELEASE FROM

16   CUSTODY, THAT SUPERVISION CAN BE REDUCED OR TERMINATED.  BUT

17   AT THIS JUNCTURE, IN MY VIEW, SUPERVISED RELEASE IS THE RIGHT,

18   JUST AND FAIR TERM FOR A PERIOD OF LIFE.

19           THERE ARE 11 CONDITIONS, SPECIAL CONDITIONS, THAT

20   HAVE BEEN SET OUT.

21                **(DISCUSSION OFF THE RECORD BETWEEN THE COURT**

22                     **AND DEPUTY CLERK)**

23           **THE COURT:**  SO THE CONDITIONS THAT THE COURT HAD

24   PROPOSED, AFTER SUSTAINING THE GOVERNMENT'S OBJECTION, ARE

25   NUMBERED 1 THROUGH 11.

1          **THE CLERK:**  YES.

2          **THE COURT:**  ON THOSE CONDITIONS, MR. MURPHY, I AM

3    PREPARED TO READ THEM ALL, OR YOU HAD INDICATED THAT YOU HAVE

4    GONE OVER EACH AND EVERY ONE OF THEM WITH YOUR CLIENT?

5          **MR. MURPHY:**  YES, JUDGE.  I RECEIVED A COPY OF THE

6    EXACT DOCUMENT THE COURT IS LOOKING AT YESTERDAY FROM THE

7    COURTROOM'S DEPUTY -- RATHER I GOT IT EARLIER.  I REVIEWED IT

8    WITH HIM YESTERDAY.  I DON'T KNOW THAT I NEED THE COURT TO

9    REVIEW -- TO READ THEM INTO THE RECORD.

10         **THE COURT:**  ALL RIGHT.

11         AND, MR. WRIGHT, MR. MURPHY WENT OVER EACH AND EVERY

12   TERM OF YOUR SUPERVISED RELEASE, THE SPECIAL CONDITIONS.  YOU

13   UNDERSTAND ALL OF THOSE TERMS?

14         **DEFENDANT WRIGHT:**  CORRECT.

15         **THE COURT:**  ALL RIGHT.

16         I WOULD IMPOSE ALL OF THOSE TERMS.

17         THE ONE ADDITIONAL TERM THAT I WANT TO BE CERTAIN IS

18   INCLUDED IS THAT YOU WOULD RESIDE IN A RESIDENCE APPROVED IN

19   ADVANCE BY THE PROBATION OFFICER, AND ANY CHANGES IN THE

20   RESIDENCE SHALL BE PREAPPROVED BY THE PROBATION OFFICER.

21         DO YOU UNDERSTAND THAT TERM AS WELL?

22         **DEFENDANT WRIGHT:**  YES.

23         **THE COURT:**  ALL RIGHT.

24         SO I WOULD IMPOSE ALL OF THE STANDARD AND MANDATORY

25   TERMS AND CONDITIONS OF SUPERVISED RELEASE, AS WELL AS THESE

1  11 SPECIAL CONDITIONS OF SUPERVISED RELEASE.

2          THE SPECIAL CONDITIONS, I AM NOT GOING TO READ THEM

3  AGAIN BECAUSE THAT WILL TAKE TEN MINUTES OR 15 MINUTES, BUT I

4  AM SATISFIED THAT, AS YOU HAVE REPRESENTED, MR. MURPHY HAS

5  GONE OVER ALL OF THEM.

6          THESE ARE THE HEART OF YOUR SUPERVISED RELEASE

7  BECAUSE THEY REQUIRE ACTIVE SUPERVISION ON THE PART OF THE

8  PROBATION OFFICER.  MONITORING OF YOUR COMPUTER USE.  THERE

9  WILL BE COMPLETE OVERSIGHT.  YOU WILL HAVE VERY LIMITED RIGHTS

10 OF PRIVACY.  THERE WILL BE SIGNIFICANT INTERVENTION AND

11 OVERSIGHT BY THE PROBATION DEPARTMENT.

12         AND YOU UNDERSTAND THAT.  AM I CORRECT?

13         **DEFENDANT WRIGHT:**  YES, I UNDERSTAND.

14         **THE COURT:**  AND, FINALLY, I WOULD INDICATE THAT

15 BECAUSE YOU HAVE BEEN SENTENCED IN ACCORDANCE WITH YOUR PLEA

16 AGREEMENT YOU HAVE WAIVED ANY RIGHT TO APPEAL OR TO LATER

17 COLLATERALLY ATTACK THE SENTENCE AND JUDGMENT.

18         DO YOU UNDERSTAND?

19         **DEFENDANT WRIGHT:**  YES.

20         **THE COURT:**  ALL OF THE PROGRAMS THAT HAVE BEEN

21 REQUESTED I WOULD RECOMMEND.  AND CERTAINLY YOU ARE GOING

22 TO -- AND I WOULD MAKE THE RECOMMENDATION FOR FMC DEVENS IN

23 MASSACHUSETTS.

24         THAT'S CLOSE TO YOUR MOTHER, AND IT IS ALSO THE

25 FACILITY THAT PROVIDES THE BEST TREATMENT THAT IS NEEDED IN

1    THIS REGARD.

2            SO I WOULD MAKE THAT RECOMMENDATION.  IT IS UP TO

3    THE BUREAU OF PRISONS, BUT HOPEFULLY THEY WILL FOLLOW THE

4    RECOMMENDATION AND MAKE THAT PLACEMENT.

5            **MR. MURPHY:**  JUDGE, WOULD IT BE -- I THINK PLACEMENT

6    IS UNUSUALLY IMPORTANT IN THIS CASE.  THERE IS ONLY TWO

7    FACILITIES IN THE COUNTRY THAT HAVE A TREATMENT PROGRAM AND A

8    SEX OFFENDER MANAGEMENT PROGRAM AT THE SAME LOCATION.  DEVENS,

9    AND THE OTHER ONE IS FAR FROM HOME AND DOESN'T HAVE -- ISN'T

10   ATTACHED TO A MEDICAL FACILITY.

11           IF IT WOULD ASSIST THE COURT -- AND ONLY IF IT WOULD

12   ASSIST THE COURT -- I COULD PREPARE SOME SORT OF PROPOSED

13   LANGUAGE FOR THE COURT TO INCLUDE ON ITS JUDGMENT.

14           AND I SAY THAT ONLY BECAUSE I DO THINK IT IS THE --

15   IT IS IMPORTANT THAT MR. WRIGHT END UP AT DEVENS IF AT ALL

16   POSSIBLE.  OTHERWISE HE IS GOING TO END UP IN A PLACE THAT IS

17   FARTHER FROM HOME AND LESS EFFECTIVE AT PROVIDING TREATMENT.

18           **THE COURT:**  WE DO PUT THE RECOMMENDATION ON THE

19   ORDER TODAY, AND IT IS ALMOST ALWAYS FOLLOWED.

20           IF IT IS NOT, THE B.O.P. ACTUALLY WRITES THE COURT.

21           **MR. MURPHY:**  OKAY.  FAIR ENOUGH.

22           **THE COURT:**  AND IF THAT IS TO OCCUR I WILL SEE TO IT

23   THAT YOU ARE PROVIDED THE INFORMATION.

24           CERTAINLY MR. WRIGHT CAN LET YOU KNOW THAT THERE HAS

25   BEEN SOME OTHER PLACEMENT.  AND THEN WE CAN PURSUE ANY OPTIONS

1    AS FAR AS PLACEMENT, IF NECESSARY.

2              **MR. MURPHY:**  THANK YOU, JUDGE.

3              **THE COURT:**  WE HAVE ADDRESSED ALL MATTERS, MR.

4    HADEN?

5              **MR. HADEN:**  YES, YOUR HONOR.  THANK YOU.

6              **THE COURT:**  ALL RIGHT.  THANK YOU.

7

8                              *   *   *

9              I CERTIFY THAT THE FOREGOING IS A CORRECT
               TRANSCRIPT FROM THE RECORD OF PROCEEDINGS
10             IN THE ABOVE-ENTITLED MATTER.

11             S/LEEANN PENCE                    9/25/2020
               LEEANN PENCE, OFFICIAL COURT REPORTER   DATE
12

13

14

15

16

17

18

19

20

21

22

23

24

25