ROBERT S. BREWER, JR.
United States Attorney
PETER KO, CBN 191994
Assistant U.S. Attorney
Federal Office Building
880 Front Street, Room 6293
San Diego, CA 92101-8893
Tel.: (619) 546-7359
Email: peter.ko2@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 16CR0354-DMS |
| v. | Date: None set<br>Time: None set |
| JOEL WRIGHT,<br>　　　　　　　Defendant. | RESPONSE IN OPPOSITION TO WRIGHT'S MOTION TO REDUCE SENTENCE PURSUANT TO FIRST STEP ACT (2018)/18 U.S.C. § 3582(c)(1)(A)(i) |

Wright has served about 56 months of his 188-month sentence ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. He seeks a reduction to time served or to have the rest of his sentence changed to home confinement because of his medical issues and Covid-19. The motion should be denied. Wright is dangerous, and the medical problems he cites now are essentially the same problems that did not prevent his crimes.

　　1.　Federal courts ordinarily cannot modify sentences once imposed. *Dillon v. United States*, 560 U.S. 817, 819 (2010); 18 U.S.C. § 3582(c). Section 3582(c)(1)(A) is a "rare exception" to that general rule. *United States v. Smeltzer*, 2020 WL 2797493, at *1 (S.D.Ca. May 29, 2020). The statute grants discretion to

reduce a sentence if, after considering the factors in 18 U.S.C. § 3553(a), a court finds "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). The statute also requires consistency with Sentencing Commission policy statements, 18 U.S.C. § 3582(c)(1)(A), which separately say Wright must not be a danger to others. USSG § 1B1.13(2), p.s.; *United States v. Spencer*, 2020 WL 5498932, at *2 (6th Cir. Sept. 2, 2020) (unpublished).

Wright does not acknowledge the latter requirement, see Mtn. 8-9 (claiming "initial step" for 3582(c)(1)(A)(i) analysis is determine if defendant "has exhausted administrative remedies," "then look" to determine whether defendant has shown extraordinary and compelling reasons," and "last step is to decide whether, in light of the factors in § 3553(a), a reduction is warranted"), much less prove he is not a danger. Cf. *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014) (defendant's burden to show eligibility for 3582(c)(2) reduction). ▮▮▮▮▮

[lines 18-26 redacted]





4

1  ██████████████████████████████████████████████████████
2  ████████████████████ ██ █████████
3      ████████████████████████████████████████████████████
4  ██████████████████████████████████████████████████████
5  ██████████████████████████████████████████████████████
6  ███████████████████████████████████████ ██ ██████████
7  ██████████████████████████████████████████████████████
8  ████████████████████████████████████████████████
9  ██████████████████████████████████████████████████████
10 ██████████████████████████████████████████████████████
11 ██████████████████████████████████████████████████████
12 ██████████████████████████████████████████████████████
13 ██████████████████████████████████████████████████████
14 ██████████████████████████████████████████████████████
15 ██████████████████████████████████████████████████████
16 ███████████████████████████████████████████████
17 ██████████ ██ ████████████████████████████████████████
18 ████████████████████████████████████ ██ ██████████
19     ██████████████████████████████████████████████████
20 ██████████████████████████████████████████████████████
21 ████████████    The only possible explanations for Wright's year
22 and a half-long campaign are he did not care, his sense of right
23 and wrong are broken, he could not control himself, or some
24 combination of two or all three. ██████████████████████████
25 ██████████████████████████████████████████████████████
26 ██████████████████████████████████████████████████████
27 ████████████████████████████████
28

To the extent his motion addresses danger, Wright seems to suggest his medical problems, "full" blindness, and dependence on others make him less a threat now. See Mtn. 2-3; *id.*, Ex. F. But Wright largely had the same problems and supposed limitations when he committed his crimes. He already essentially was blind, was beset with medical problems and dependent on others, had greatly restricted mobility, and needed many accommodations. See, e.g., PSR, para. 94 (Wright is "blind in his right eye and can only see shadows in his left eye" and "only time he can see, with little clarity, is when it is two inches from his face"); *id.*, para. 95-108; Mtn., Ex. A (2013 certification Wright is legally blind in both eyes); *id.*, Ex. E (2011 doctor's letter summarizing learning and mobility limitations). ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Wright overcame his limitations which may be more a sign of his determination and the power of his interest.

    2.    Wright's failure to prove he is not a danger defeats the motion to reduce his sentence. The motion also should be denied because even if he had made that showing and his medical

problems are extraordinary and compelling,[1] reduction remains discretionary, not mandatory. *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020); see also 18 U.S.C. § 3582(c)(1)(A) ("may reduce").

Wright naturally is preoccupied with his self-interest, but sentencing is only partly about what is best for a defendant. Most 3553(a) factors are directed towards the public interest. Those considerations all weigh heavily against reduction. As the court already recognized, Wright's crime was "simply stated, horrific," "most deserving of punishment for punishment's sake alone," and "most deserving of imposing a sentence that will protect society." R 59 at 34; see 18 U.S.C. §§ 3553(a)(1) and (a)(2)(A) & (C). The reduction that Wright seeks—effectively to five years of imprisonment (or even five years of imprisonment and 10 years of "home detention," Mtn. 27) ▇▇▇▇▇▇▇▇▇▇▇▇—would undersell the gravity of his crime, provoke questions about the sensibility and justice of the law, promote an undesired message that such conduct is not always met harshly, and (without persuasive reason to think there is a high likelihood Wright will not re-offend) endanger "the most vulnerable of society." R 59 at 35 ("there has to be a sentence that focuses on punishment and deterrence and protection"); see 18 U.S.C. § 3553(a)(2). It would be several years below the

---

[1] Wright says he is 5-7, 218 pounds, and obese. Mtn. 13. The PSR listed him as 5-3, 175 pounds. PSR, page 2. We do not know which is accurate, but the PSR's dimensions still would be a BMI 31.

recommended range, R 59 at 30 (168-210 months); 18 U.S.C. § 3553(a)(4)(A), and differ greatly from sentences ordinarily imposed for Wright's crime. ████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████

Wright's motion rests heavily on the premise that his life is at risk because of his condition, Covid-19, his facility, the Bureau of Prisons, and custody in general. Mtn. 18-25. No doubt the present circumstances are concerning and difficult. They are everywhere for everyone. But at points Wright relies on outdated or inaccurate information. He suggests new prisoners at his facility are not tested for Covid-19. Mtn. 19. The BOP tests all new inmates. The methods have evolved. The current practice is each institution screens every new inmate "on arrival" with "a symptom screen, temperature check, and an approved viral PCR test." Bureau of Prisons, Aug 5, 2020 Memorandum for All Chief Executive Officers re: Coronavirus (Covid-19) Phase Nine Action Plan at 6, available at www.documentcloud.org/documents/7016444-BOP-Phase-9-Covid-Action-Plan.html (last visited Oct. 1, 2020). Prisoners then are quarantined for at least 14 days or, if symptomatic or the initial test is positive, isolated until they

recover. Quarantined prisoners with no symptoms only move to general population after a final temperature check and lab test are negative. *Id.* at 6-7. This is just one of several steps the BOP has taken to fight exposure and spread. *Id.* at 1-11.

Wright cites problems specifically at FCI Danbury. Mtn. 18-19. Danbury had issues earlier this year. Current statistics updated daily, however, report two positive inmates and no positive staff at the facility. Covid-19 Cases, Bureau of Prisons, available at www.bop.gov/coronavirus/ (last visited Oct. 2, 2020). As of late July 2020, Danbury also had reviewed 313 "medically vulnerable" inmates (including Wright) and released 119 to "home confinement or community placement." Yale Law School, Clinic Reaches Settlement Agreement in Bureau of Prisons Covid-19 Case, July 28, 2020, available at law.yale.edu/yls-today/news/clinic-reaches-settlement-agreement-bureau-prisons-Covid-19-case (last visited Sept. 29, 2020). FCI Danbury's population is now 77 inmates below where it was six months ago. Compare FCI Danbury, available at bop.gov/locations/institutions/dan/ (659 inmates as of Oct. 2, 2020) with FCI Danbury, available at web.archive.org/web/20200418153730/https://www.bop.gov/locations/institutions/dan/ (736 inmates as of April 18, 2020). Danbury is not risk-free; nowhere is, custodial or otherwise. But the facility has been headed in the right direction and is in better condition than portrayed.

[redacted]

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Wright has not received treatment *yet*. Motion aside, he is not scheduled to be released for almost nine years. There is still ample time to send him to a program later in his term, closer to his release.

Wright points to his personal history and those who support him. E.g., Mtn. 28. Wright certainly has achieved much considering the obstacles he faced from birth, and several have vouched for his character beyond the crime. See, e.g., PSR, para. 88. But Wright also apparently hid a dark, significant part of his life from everyone—including his mother who may still think he is innocent, Mtn., Ex. C—which raises questions about how well those who think they know him do know him.

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓ So does his conduct, or presumably he would not have done the things he did. At best, Wright rationalized his beliefs and actions to make them acceptable to him which, if it is different, is not by much. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

1  ███████████████████████████████████████
2  ████████████████████████
3    ██████████████████████████████████
4  ███████████████████████████████████████
5  ███████████████████ █ ████████████████
6  ███████████████████████████████████████
7  ███████████████████████████████████
8  ███████████████████████████████████████
9  ███████████████████████████████████████
10 ███████████████████████████████████████
11 █████████████████████████████. That is only more
12 reason not to release him sooner than necessary as it renders
13 meaningless assurances that the same or similar thing would not
14 happen again.
15      The motion to reduce Wright's sentence should be denied.
16      DATED: Oct. 2, 2020            Respectfully submitted,
17                                     ROBERT S. BREWER, JR.
                                       United States Attorney
18
                                       s/Peter Ko
19                                     PETER KO
                                       Assistant U.S. Attorney