UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

AUG 22 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff - Appellee,<br><br>　v.<br><br>JOEL ALEXANDER WRIGHT,<br><br>　　　　　Defendant - Appellant. | No. 20-50361<br><br>D.C. No. 3:16-cr-00354-DMS-1<br>U.S. District Court for Southern<br>California, San Diego<br><br>**MANDATE** |

The judgment of this Court, entered July 29, 2022, takes effect this date.

This constitutes the formal mandate of this Court issued pursuant to Rule

41(a) of the Federal Rules of Appellate Procedure.

FOR THE COURT:

MOLLY C. DWYER
CLERK OF COURT

By: Rebecca Lopez
Deputy Clerk
Ninth Circuit Rule 27-7

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. JOEL ALEXANDER WRIGHT, *Defendant-Appellant.* | No. 20-50361 D.C. Nos. 3:16-cr-00354-DMS-1 3:16-cr-00354-DMS OPINION |

Appeal from the United States District Court
for the Southern District of California
Dana M. Sabraw, Chief District Judge, Presiding

Argued and Submitted December 9, 2021
Pasadena, California

Filed July 29, 2022

Before: Marsha S. Berzon and Carlos T. Bea, Circuit
Judges, and Richard D. Bennett,[*] District Judge.

Opinion by Judge Bennett

---

[*] The Honorable Richard D. Bennett, United States Senior District
Judge for the District of Maryland, sitting by designation.

# SUMMARY[**]

## Criminal Law

The panel affirmed the district court's denial of Joel Alexander Wright's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), in which Wright requested a reduction to time served and immediate release, or, in the alternative, home detention for the balance of his sentence.

Wright contended that the district court abused its discretion by denying his motion based on the dangerousness finding imposed by U.S.S.G. § 1B1.13. In *United States v. Aruda*, this Court held that the current version of § 1B1.13 is not an applicable policy statement for § 3582(c)(1)(A)(i) motions filed by a defendant. Following *Aruda*, while the Sentencing Commission's statements in § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A)(i) motions filed by a defendant, they cannot be treated as binding constraints on the court's analysis. Here, the district court did precisely what *Aruda* proscribes: it denied Wright's motion by holding that he failed to demonstrate that he is "not a danger to others or [to] the community" pursuant to § 1B1.13. The panel wrote that this holding is an abuse of discretion.

The panel held that *Aruda* error is harmless if the court properly relied on 18 U.S.C. § 3553(a) sentencing factors as an alternative basis for its denial of a compassionate release motion, as the district court did here when it held in the alternative that the 18 U.S.C. § 3553(a) sentencing factors

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

weighed "squarely against" granting Wright's compassionate release motion. The panel wrote that although Wright may take issue with the balance the court struck, mere disagreement with the weight of these factors does not amount to an abuse of discretion. The panel therefore held that the district court's reliance on § 1B1.13 was harmless error.

Wright also contended that the district court abused its discretion by failing to respond to his alternative request to serve the rest of his sentence under home confinement. The panel held that the district court adequately addressed that request, as Wright did not adduce any evidence or advance any arguments in support of it, which rested on the same legal and factual foundation as his request for a time-served sentence. Given the arguments made and the judge's knowledge of the record, the panel was satisfied that the judge adequately considered Wright's motion and had a reasoned basis for exercising his own legal decision-making authority.

## COUNSEL

Jessica Agatstein (argued) and Katie Hurrelbrink, Federal Defenders of San Diego Inc., San Diego, California, for Defendant-Appellant.

Joseph S. Green (argued), Assistant United States Attorney; Daniel E. Zipp, Chief, Appellate Section, Criminal Division; Randy S. Grossman, Acting United States Attorney; United States Attorney's Office, San Diego, California; for Plaintiff-Appellee.

## OPINION

BENNETT, District Judge:

After pleading guilty in 2016 to the attempted enticement of a minor, Joel Alexander Wright was sentenced to 188 months' imprisonment followed by lifetime supervised release. After serving about five years of that sentence, Wright petitioned for compassionate release under 18 U.S.C. § 3582(c)(1)(A), requesting a sentence reduction to time served and immediate release, or, in the alternative, home detention for the balance of his sentence. After reviewing Wright's motion and his briefings, the district court denied this motion. On appeal, Wright contends the court abused its discretion by denying his motion based on the dangerousness finding imposed by U.S.S.G. § 1B1.13, and by declining to consider his alternative request to serve the rest of his sentence under home confinement.

We affirm the holding of the district court as to both issues. We have recently held that a district court abuses its discretion by construing the U.S.S.G. § 1B1.13 policy statement as binding. *See United States v. Aruda*, 993 F.3d 797, 799, 802 (9th Cir. 2021) (per curiam). Nevertheless, any error by the district court here in relying on § 1B1.13 was harmless in light of the court's alternative holding under the 18 U.S.C. § 3553(a) sentencing factors. Additionally, as Wright did not adduce any evidence or advance any arguments in support of his alternative request for home confinement, the district court adequately addressed that request.

## BACKGROUND[1]

In January 2016, Wright was arrested at the San Diego Airport for the attempted enticement of a minor and related charges. In April 2016, Wright waived indictment and pleaded guilty to violation of 18 U.S.C. § 2422(b). During his sentencing in July 2016, defense counsel recommended the statutory mandatory minimum 120 months' imprisonment, while the Government requested 168 months. Defense counsel spoke to the unusual hardships Wright would experience in custody, and argued that "the reality of supervision, combined with his disabilities . . . should speak somewhat to the court's legitimate concern for incapacitation." The Government highlighted the very serious nature of Wright's offenses and noted that he had made "a sophisticated attempt" to commit them "despite all of his physical struggles."

On balance, the district court found that the facts of Wright's case were "most deserving of punishment for punishment's sake alone, and most deserving of imposing a sentence that will protect society." The court recognized that Wright's "overwhelmingly positive" personal history and characteristics—including his family support, his faith, and his remorse—counselled mitigation. Nevertheless, the Court noted that Wright had "continued to pursue this activity" despite his "remorse and misgivings," and notwithstanding his physical disabilities. Accordingly, commensurate with the advisory United States Sentencing Guidelines, and the 18 U.S.C. § 3553(a) sentencing factors, the court sentenced Wright to 188 months' imprisonment followed by a lifetime

---

[1] To the extent that record information referenced in this opinion has been filed under seal, we hereby unseal it for the limited purpose of this opinion.

period of supervised release. Wright is housed at the Federal
Correctional Institution ("FCI") Danbury, Connecticut, and
is projected to be released in June of 2029.

Wright has struggled with disabilities throughout his life.
Although Wright received some treatment in the custody of
the Bureau of Prisons, his health continued to decline.

In September 2020, Wright filed a motion for
compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i),
pursuant to the First Step Act of 2018, Pub. L. No. 115-391,
132 Stat. 5194. Through this motion, Wright requested a
reduced sentence of time served, and argued in the
alternative that his sentence "be modified to allow him to
serve the rest of his sentence under home confinement as a
condition of supervised release." At the time of this motion,
Wright had served about five years of his 188-month
sentence, with approximately ten years remaining. In
support of his request for a time-served sentence, Wright
argued that his medical conditions rendered him particularly
susceptible to COVID-19 and that the prisons were not
equipped to protect him from the spread of the virus. In
addition, Wright argued that the prison's COVID-19
lockdown protocols had prevented him from receiving the
assistance he requires due to his disabilities.

Although Wright argued in favor of a time served
sentence, he provided no additional arguments to support his
alternative request for home confinement. Home
confinement was mentioned in passing throughout the body
of the motion, and Wright concluded by "respectfully
request[ing] that the Court grant a reduction in his sentence
to time served with a condition of home detention for the rest
of his sentence," but he failed entirely to discuss why this
request was appropriate. Nowhere in the motion was there
any discussion of the specific conditions to be imposed, how

such conditions would suffice to protect the public and prevent Wright from reoffending, or why such conditions would amount to just punishment in this case.

The district court denied Wright's motion on December 21, 2020. Declining to address whether Wright's medical conditions constitute "extraordinary and compelling" reasons for a sentence reduction, the court found that the U.S.S.G. § 1B1.13 policy statement and the 18 U.S.C. § 3553(a) sentencing factors weighed against a sentence reduction. Under § 1B1.13, the court found Wright had failed to show that he was "not a danger to others or the community" given "the disturbing nature of Defendant's crime" and the fact that he had committed it while he "was already" suffering from the same disabilities. Under § 3553(a), the court reiterated its concerns about dangerousness, and concluded that the "overarching goals of punishment, deterrence, protection of society, and rehabilitation" weighed "squarely against" compassionate release. The court did not specifically address Wright's request for home confinement as a condition of supervised release.

This appeal followed.

## STANDARD OF REVIEW

A district court's ruling on a compassionate release motion under § 3582(c)(1) is reviewed for abuse of discretion. *Aruda*, 993 F.3d at 799. "A district court may abuse its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact." *Id.* (quoting *United States v. Dunn*, 728 F.3d 1151, 1155 (9th Cir. 2013)); *see United States v. Hinkson*, 585 F.3d 1247, 1251 (9th Cir. 2009) (en banc) (holding that a district court's ruling is an abuse of discretion if it reaches a

conclusion that is "illogical, implausible, or without support in inferences that may be drawn from the facts in the record."); *Dunn*, 728 F.3d at 1159 ("[M]ere disagreement does not amount to an abuse of discretion.").

## DISCUSSION

### I.   The District Court's *Aruda* Error was Harmless in Light of its Alternative Holding Under § 3553(a)

Ordinarily, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Keller*, 2 F.4th 1278, 1281 (9th Cir. 2021) (quoting 18 U.S.C. § 3582(c)). Through the Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, 98 Stat. 1837, Congress created a limited exception to this rule by authorizing courts to grant compassionate release when "extraordinary and compelling reasons" warrant a reduction in sentence. 18 U.S.C. § 3582(c)(1)(A)(i). As compassionate release derogates from the principle of finality, it is a "narrow" remedy, *see Freeman v. United States*, 564 U.S. 522, 526 (2011), and the court's disposition of a compassionate release motion "is discretionary, not mandatory," *United States v. Jones*, 980 F.3d 1098, 1106 (6th Cir. 2020) (citing *United States v. Curry*, 606 F.3d 323, 330 (6th Cir. 2010)).

The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, established significant changes to the procedures for filing a motion for compassionate release. As originally enacted, § 3582(c)(1)(A)(i) vested the Bureau of Prisons with exclusive discretion to file compassionate release motions. *Aruda*, 993 F.3d at 799. The Department of Justice found in 2013 that this process was marked by delays and mismanagement, and that the Bureau exercised this discretion so "sparingly" that "an average of only

24 imprisoned persons were released each year by BOP motion." *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020); *United States v. Brooker*, 976 F.3d 228, 230–32 (2d Cir. 2020) (observing that out of 208 prisoners approved for compassionate release, 13% died awaiting a final decision by the BOP Director). Accordingly, "Congress amended § 3582(c)(1)(A) to 'remove the Bureau of Prisons from its . . . role as a gatekeeper over compassionate release petitions,'" and to expand the use of the compassionate release process. *McCoy*, 981 F.3d at 276. Following the passage of the First Step Act, defendants are authorized to directly petition the court for compassionate release after exhausting their administrative remedies within the Bureau of Prisons.[2] *Keller*, 2 F.4th at 1281.

The First Step Act grants courts the discretion to consider compassionate release motions on an individualized basis. *See Brooker*, 976 F.3d at 230. As the Sixth Circuit recently observed, the exercise of this discretion is controlled by three substantive considerations. *See Jones*, 980 F.3d at 1107–08 (citing *Dillon v. United States*, 560 U.S. 817, 827, 829–30 (2010)). First, the district court must determine whether "extraordinary and compelling reasons warrant" a sentence reduction. *Id.* at 1107–08 (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Second, the court must evaluate whether a reduction would be "consistent with *applicable* policy statements issued by the Sentencing Commission." *Id.* at 1108 (quoting 18 U.S.C.

---

[2] Specifically, a defendant may file a motion for compassionate release only if he or she has submitted a request to the warden of his or her facility, and either: (1) the warden has denied that request and the defendant has exhausted all rights to appeal within the Bureau of Prisons; or (2) thirty days have lapsed since the request was submitted. *Keller*, 2 F.4th at 1281; 18 U.S.C. § 3582(c)(1)(A).

§ 3582(c)(1)(A)). Third, the court must consider and weigh the factors set forth in 18 U.S.C. § 3553(a) to decide whether the requested sentence reduction is warranted "under the particular circumstances of the case." *Id.* (quoting *Dillon*, 560 U.S. at 827).[3] Although a district court must conclude that a defendant satisfies all three predicates before granting a motion for compassionate release, it may deny compassionate release if a defendant fails to satisfy any of these grounds. *Keller*, 2 F.4th at 1284.

The Sentencing Commission's policy statement located at U.S.S.G. § 1B1.13 governs the analysis of compassionate release motions. This policy requires a court to determine that "[t]he defendant is not a danger to the safety of any other person or to the community" before granting compassionate release. U.S.S.G. § 1B1.13(2).[4] However, U.S.S.G. § 1B1.13 has not been updated to reflect the passage of the First Step Act. Consequently, in *United States v. Aruda*, this Court held that the current version of U.S.S.G. § 1B1.13 "is not an 'applicable policy statement[]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." 993 F.3d at 802 (quoting 18 U.S.C. § 3582(c)(1)(A)) (alteration in

---

[3] These factors include, among other things: (1) the defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offense; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable sentence guidelines; and (6) the need to avoid unwarranted sentencing disparities among similarly situated defendants. 18 U.S.C. § 3553(a).

[4] To make a dangerousness finding, a court must consider: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger the defendant would pose to others upon release. 18 U.S.C. § 3142(g).

original).[5] Following *Aruda*, while "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant," they cannot be treated as binding constraints on the court's analysis. 993 F.3d at 802.

In the case before us, the district court did precisely what *Aruda* proscribes: It denied Wright's motion by holding that he failed to demonstrate that he is "not a danger to others or [to] the community" pursuant to U.S.S.G. § 1B1.13. This holding was an abuse of discretion. However, the court also held in the alternative that the 18 U.S.C. § 3553(a) sentencing factors weighed "squarely against" granting Wright's compassionate release motion. Accordingly, this case requires us to decide whether an *Aruda* error requires reversal if the district court denies the defendant's motion under § 3553(a) in the alternative. For the reasons stated below, we hold that such an error is harmless.

As an initial matter, we must determine whether *Aruda* controls this issue. "[W]here a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit," *United States v.*

---

[5] In so holding, we joined a growing consensus among the federal circuits that § 1B1.13 is not an "applicable policy statement" to defense-filed compassionate release motions in light of the First Step Act. *United States v. Long*, 997 F.3d 342, 355 (D.C. Cir. 2021); *Brooker*, 976 F.3d at 235–36; *McCoy*, 981 F.3d at 281–82; *United States v. Shkambi*, 993 F.3d 388, 392–93 (5th Cir. 2021); *Jones*, 980 F.3d at 1109–11; *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020); *United States v. McGee*, 992 F.3d 1035, 1049–50 (10th Cir. 2021). *But see United States v. Bryant*, 996 F.3d 1243, 1247 (11th Cir. 2021) ("1B1.13 is still an applicable policy statement for a [compassionate release] motion, no matter who files it.").

*McAdory*, 935 F.3d 838, 843 (9th Cir. 2019) (quoting *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1173 (9th Cir. 2004)) (alteration in original), and "the matter is deemed resolved, unless overruled by the court itself sitting en banc, or by the Supreme Court." *Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001). To determine the scope of a prior holding, a court must evaluate not only "the rule announced, but also the facts giving rise to the dispute, other rules considered and rejected[,] and the views expressed in response to any dissent or concurrence." *Id.* at 1170–71 (citing *Fisher v. Prince*, 97 Eng. Rep. 876, 876 (K.B. 1762)).

Wright claims *Aruda* forecloses any harmless error analysis, as the district court in that case also weighed the § 3553(a) sentencing factors, and we did not hold that its reliance on § 1B1.13 was harmless. *See United States v. Aruda*, 472 F. Supp. 3d 847, 856 (D. Haw. 2020). We disagree. Whatever factual similarities may exist between these cases,[6] the Government did not argue harmless error in *Aruda*, and the *Aruda* panel did not mention this issue anywhere in its opinion, much less grant it "reasoned consideration." *McAdory*, 935 F.3d at 843 (quoting *Cetacean*, 386 F.3d at 1173); *accord United States v. Murguia-Rodriguez*, 815 F.3d 566, 572 (9th Cir. 2016) ("As

---

[6] We are skeptical that *Aruda* is analogous. The district court in *Aruda* conflated its assessment of § 3553(a) and § 1B1.13 and analyzed the two standards in tandem. *See id.* at 856 (assessing "Section 3553(a) Factors & Risk of Danger to the Community"). Here, the district court kept the analyses largely distinct. Although the court incorporated related facts from the dangerousness analysis by reference, this was not error—both standards explicitly require the court to consider "the nature and circumstances of the offense" and "the history and characteristics" of the defendant, as well as the need to protect the public. *Compare* 18 U.S.C. § 3142(g) (dangerousness), *with* 18 U.S.C. § 3553(a)(1), (2) (sentencing factors).

a general and consistent rule, 'when the government fails to argue harmlessness, we . . . do not consider the harmlessness of any errors we find.'") (quoting *United States v. Kloehn*, 620 F.3d 1122, 1130 (9th Cir. 2010)); *United States v. Gonzalez-Flores*, 418 F.3d 1093, 1100 (9th Cir. 2005)).[7] Accordingly, the holding in *Aruda* does not stretch as far as Wright contends.

This Court's subsequent decisions suggest that the district court's error in this case was harmless. In *United States v. Keller*, decided after *Aruda*, we held that "a district court that properly *denies* compassionate release need not evaluate each step" in the "sequential step-by-step analysis" required by 18 U.S.C. § 3582(c)(1)(A). 2 F.4th at 1284 (emphasis in original). Such a reading is compelled by the structure of the compassionate release statute, which treats its requirements as conjunctive. *Id.* This structure necessarily dictates that a court may deny compassionate release at any stage of the § 3582(c)(1)(A) pipeline. *See, e.g.*, *United States v. Keitt*, 21 F.4th 67, 73 n.4 (2d Cir. 2021) (collecting cases); *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021); *United States v. Tinker*, 14 F.4th 1234,

---

[7] Wright argues that the Government in *Aruda* addressed this issue in the closing paragraphs of its brief. This contention mischaracterizes the Government's position, which is better viewed as an argument for judicial restraint. The Government argued only that the *Aruda* Court should rule on the § 3553(a) factors without deciding whether § 1B1.13 was an "applicable policy statement"—it did not claim that any erroneous application of § 1B1.13 had no effect on the result. To the extent that this may be construed as a harmless error argument, it was undeveloped and was not addressed by the court. *See Murguia-Rodriguez*, 815 F.3d at 572–73 (emphasizing that this court will ordinarily decline to address harmless error "even when the government 'mentions' that harmless error applies in its brief but fails to advance a developed theory about how the errors were harmless.'" (quoting *Gonzalez-Flores*, 418 F.3d at 1100 n.4)).

1238–40 (11th Cir. 2021). The logical endpoint of this rule is that when a district court properly denies a compassionate release motion on at least one ground, improper considerations at other steps of this analysis have no effect on the final disposition. Such errors are harmless, and do not require reversal.

Consistent with this proposition, other circuits to address the issue have held that an erroneous application of § 1B1.13 is harmless if "the court's weighing of the § 3553(a) factors independently supports its decision." *United States v. Sanders*, 992 F.3d 583, 588 n.3 (7th Cir. 2021); *see, e.g.*, *United States v. Tomes*, 990 F.3d 500, 503 (6th Cir. 2021) ("[E]ven if a district court wrongly constrains itself to § 1B1.13 to define extraordinary and compelling reasons for release, we can still affirm if the court uses § 3553(a) as an independent reason to deny relief.").[8] We hold that although a district court addressing a compassionate release motion filed by a defendant may not construe U.S.S.G. § 1B1.13 as a binding constraint on its discretion, such an error is harmless if the court properly relied on the 18 U.S.C.

---

[8] This Court has consistently reached the same conclusion in non-precedential memorandum dispositions interpreting *Aruda* and *Keller*. *See, e.g.*, *United States v. Washington*, No. 21-10017, 2021 WL 5399861, *1 (9th Cir. Nov. 18, 2021); *United States v. Smith*, No. 21-50017, 2021 WL 4922412, *1 (9th Cir. Oct. 21, 2021); *United States v. Decano*, No. 21-10099, 2021 WL 4922348, *1 (9th Cir. Oct. 21, 2021); *United States v. Granderson*, No. 20-10407, 857 F. App'x 407, 407 (9th Cir. Aug. 23, 2021); *United States v. Tadios*, No. 20-10434, 854 F. App'x 804, 804 (9th Cir. Aug. 2, 2021). Although memorandum dispositions are "not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion," *Grimm v. City of Portland*, 971 F.3d 1060, 1067 (2020) (quoting U.S. Ct. of App. 9th Cir. R. 36-3(a)), we find the reasoning in these memorandum dispositions persuasive.

§ 3553(a) sentencing factors as an alternative basis for its holding.

Such is the case here. In its opinion denying Wright's motion, the district court improperly relied on U.S.S.G. § 1B1.13 to conclude that Wright presents a danger to the community. However, the district court held in the alternative that the § 3553(a) factors "weigh squarely against release." In its evaluation of the § 3553(a) sentencing factors, the court concluded that the severity of Wright's offense underscored "the need to provide just punishment and promote respect for law" and the "strong need to protect the public." The court correctly weighed these considerations against Wright's "history and characteristics, including [his] positive support from family members and others as well as his various health ailments and difficult childhood." And it concluded that "[t]o so dramatically reduce [Wright's] sentence . . . would neither be just nor promote respect for the law; if anything, it would promote disrespect for the law." Although Wright may take issue with the balance the court struck, "mere disagreement" with the weight of these factors "does not amount to an abuse of discretion." *Dunn*, 728 F.3d at 1159. We therefore hold that the district court's reliance on § 1B1.13 was harmless error.

## II. The Court Adequately Explained its Denial of Wright's Motion

Wright also contends that the district court abused its discretion by failing to respond to his request for home confinement. "It is a general principle of federal sentencing law that district courts have a duty to explain their sentencing decisions." *United States v. Emmett*, 749 F.3d 817, 820 (9th Cir. 2014) (citing *United States v. Carty*, 520 F.3d 984, 992–93 (9th Cir. 2008) (en banc); *United States v. Trujillo*, 713 F.3d 1003, 1009 (9th Cir. 2013)); *accord Concepcion v.*

*United States*, ___ S. Ct. ___, 2022 WL 2295029, at *12 (2022) ("It is well established that a district court must generally consider the parties' nonfrivolous arguments before it."). As the duty to provide a reasoned explanation is ultimately grounded in the sentencing court's responsibility to consider the § 3553(a) factors, *Trujillo*, 713 F.3d at 1009, it applies both "to the initial sentence imposed by the district court, and . . . to rulings on requests for a sentenc[e] reduction," *Emmett*, 749 F.3d at 820; *accord Chavez-Meza v. United States*, 138 S. Ct. 1959, 1963 (2018) (anchoring this duty in the statutory requirement that judges their explain sentencing decisions "in open court" (quoting 18 U.S.C. § 3553(c))). Such explanations facilitate "meaningful appellate review" of sentencing decisions, *Gall v. United States*, 552 U.S. 38, 50 (2007), and reinforce "the public's trust in the judicial institution," *Rita v. United States*, 551 U.S. 338, 356 (2007), by "communicat[ing] that the parties' arguments have been heard, and that a reasoned decision has been made," *Carty*, 520 F.3d at 992.

To fulfill this responsibility, a sentencing judge must articulate "a sufficient explanation of the sentencing decision to permit meaningful appellate review." *Trujillo*, 713 F.3d at 1009; *accord United States v. Cook*, 998 F.3d 1180, 1183–84 (11th Cir. 2021); *United States v. High*, 997 F.3d 181, 188–89 (4th Cir. 2021). What constitutes sufficient explanation depends on "the complexity of the particular case," including the exhaustiveness of the record and the nature of the parties' arguments. *Carty*, 520 F.3d at 995–96. Ordinarily, a judge should address any "specific, nonfrivolous argument tethered to a relevant § 3553(a) factor in support of a requested sentence," and "explain why he accepts or rejects the party's position." *Id.* at 992–93. Nevertheless, a judge is not required to exhaustively analyze every factor or to expound upon every issue raised by a

defendant. *Id.* at 995–96; *accord High*, 997 F.3d at 188–89 (rejecting a "categorical rule" that a sentencing court must "invariably *acknowledge and address* each of the defendant's arguments on the record" (emphasis in original)). Rather, the judge "need only 'set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority.'" *Chavez-Meza*, 138 S. Ct. at 1964 (citation omitted). Provided this standard is met, the length and exhaustiveness of a judicial explanation is a matter of "professional judgment." *Rita*, 551 U.S. at 356; *accord United States v. Ugbah*, 4 F.4th 595, 598 (7th Cir. 2021) ("Section 3582(c)(1) concerns the length of imprisonment, not the length of judicial opinions.").

Consistent with these principles, in *United States v. Trujillo*, this Court held that a district court erred when it overlooked extensive, nonfrivolous arguments and evidence filed in support of relevant § 3553(a) factors. 713 F.3d at 1010. In *Trujillo*, the defendant filed a motion for sentence reduction under 18 U.S.C. § 3582(c)(2), citing "his family ties, his lack of other criminal history, his post-sentencing rehabilitation, and the need to avoid unwarranted sentencing disparities." *Id.* at 1005. The district court denied his motion, highlighting only the nature and circumstances of the offense, and offering no discussion of Trujillo's evidence. *Id.* On appeal, we reversed, observing that the court had failed to address "fairly extensive arguments and evidence concerning the 'characteristics of the defendant,' . . . and 'unwarranted sentencing disparities,'" two § 3553(a) factors. *Id.* at 1009–10 (citing 18 U.S.C. §§ 3553(a)(1), 3553(a)(6)).[9] Reasoning that the Supreme Court has

---

[9] The appellant in *Trujillo* presented evidence of "his educational history including graduation from technical school as a mechanical

18          UNITED STATES V. WRIGHT

emphasized the importance of this evidence, we held that the court's "total omission" of Trujillo's "nonfrivolous arguments" pursuant to these factors contravened "the explicit policy considerations" articulated in *Rita* and its progeny. *Id.* at 1010–11.

Comparatively, if "the 'context and the record'" reflect that the sentencing judge considered the defendant's substantive arguments and offered "a reasoned basis" for his or her decision, a judge need not "provide a lengthy explanation" for his or her sentencing decision. *Chavez-Meza*, 138 S. Ct. at 1966 (quoting *Rita*, 551 U.S. at 356, 359). In *United States v. Chavez-Meza*, the petitioner filed a motion under 18 U.S.C. § 3582(c)(2), seeking to reduce his sentence to 108 months following an intervening change in the Guidelines range applicable to his conviction, and offered evidence of rehabilitation in support of this motion. *Id.* at 1965, 1967. The district court granted Chavez-Mesa's motion in part, but reduced his sentence only to 114 months, rather than the 108 he requested. *Id.* at 1965. The judge issued his decision on a form order on which he merely checked boxes certifying that he "had 'considered' petitioner's 'motion' and 'tak[en] into account' the § 3553(a) factors." *Id.* (alteration in original). The court offered no further explanation or analysis.

---

electrician; the support of his siblings and two children; his considerable involvement in constructive prison activities; his post-sentencing rehabilitation; and his failing health." *See Trujillo*, 713 F.3d at 1009. He also cited two decisions by this Court as evidence of the sentencing disparities he claimed in his motion. *See United States v. Zakharov*, 468 F.3d 1171, 1171, 1175 (9th Cir. 2006); *United States v. Perlaza*, 439 F.3d 1149, 1155, 1158 (9th Cir. 2006). The sentencing court failed to address any of these materials.

Chavez-Meza appealed, arguing "that the judge did not adequately explain why he rejected petitioner's 108-month request." *Id.* at 1965. The Supreme Court rejected this assertion, placing particular emphasis on "the simplicity of [the] case, the judge's awareness of the arguments, his consideration of the relevant sentencing factors, and the intuitive reason" for his decision. *Id.* at 1967–68. Additionally, the Court observed that petitioner's motion under § 3582(c)(2) had been denied by "the same judge who had sentenced petitioner originally," and at the original sentencing hearing, the judge had rejected a downward departure from the Guidelines range due to the severity of the offense. *Id.* at 1966–67. These features of the case were sufficient to explain why the judge issued "a sentence somewhat higher than the bottom of the reduced range" in response to Chavez-Meza's motion. *Id.* at 1967. Accordingly, the "record as a whole satisfie[d]" the Court that the sentencing judge had "considered the parties' arguments" and offered "a reasoned basis for exercising his own legal decisionmaking authority." *Id.* (quoting *Rita*, 551 U.S. at 356).

Wright attempts to analogize *Trujillo*, arguing that the district court "failed to even consider" his alternative request for home confinement, and that this "total omission" violates its responsibility to explain its sentencing decisions. He argues that his request for home confinement would allow the district court to maintain his 188-month sentence, ameliorating the court's penological concerns regarding deterrence, just punishment, and respect for the law, while accounting for his medical conditions and mitigating the risk that he would pose to the public upon release. He also argues that "going from a no-confinement sentence to a home-confinement sentence tilts the entire § 3553(a) balance in the movant's direction." Wright did not present these arguments

in his motion to the district court. His failure to do so is dispositive of any claim that the court failed to explain its decision.[10]

As a preliminary matter, a modified time-served sentence is a "necessary predicate" to Wright's home confinement request. Although the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), allows a court to reduce a defendant's term of imprisonment, it does not authorize a judge to alter the location of a prisoner's confinement, a matter committed to the discretion of the Bureau of Prisons. *United States v. Ceballos*, 671 F.3d 852, 855 (9th Cir. 2011) (per curiam) ("While a [district court] judge has wide discretion in determining the length and type of sentence, the court has no jurisdiction to select the place where the sentence will be served. Authority to determine place of confinement . . . is delegated to the Bureau of Prisons." (quoting *United States v. Dragna*, 746 F.2d 457, 458 (9th Cir. 1984) (per curiam) (alteration in original)). Instead, upon granting a sentence reduction, a court "may impose a

---

[10] Pursuant to Fed. R. App. P. 28(j), Wright filed a citation of supplemental authorities referencing the Supreme Court's recent decision in *Concepcion v. United States* for the principle that a district court is "required" to "demonstrate that it has considered the arguments before it." ___ S. Ct. ___, 2022 WL 2295029, at *12 (2022). This language is largely reiterative of the principles announced in *Rita* and *Chavez-Meza*. Cf. 551 U.S. at 356 ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); 138 S. Ct. at 1964 ("At bottom, the sentencing judge need only 'set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority.'"). In any event, *Concepcion* does not help Wright, who failed to offer the district court any independent arguments in favor of his alternative request for home confinement.

term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment," 18 U.S.C. § 3582(c)(1)(A), including a condition of home detention "as a substitute for imprisonment." U.S.S.G. § 5F1.2; *see also* 18 U.S.C. § 3583(c).

Accordingly, Wright's request for home confinement would not allow the district court to "keep his 188-month sentence" intact, and would not address the court's concerns regarding just punishment, deterrence, and respect for the law. (emphasis omitted). Granting this request would require the district court to reduce his sentence to time served and impose home detention as a condition of supervised release. The district court provided "a reasoned basis" for its refusal to do so, *Chavez-Meza*, 138 S. Ct. at 1966, when it observed that Wright had committed his crime while he "was already [disabled]," and held that the "overarching goals of punishment, deterrence, protection of society, and rehabilitation" weigh "squarely against" a time-served sentence.

In his briefing before this Court, Wright argues that a condition of home confinement would shift "the entire § 3553(a) balance in the movant's direction," and ameliorate the district court's concerns about dangerousness and recidivism by enhancing the level of supervision imposed in his original sentence. However, it was Wright's burden to establish his eligibility for compassionate release, and he did not present these arguments to the district court. Accordingly, *Trujillo* is inapposite: In that case, "Trujillo presented nonfrivolous arguments, and the district court did not at all explain the reasons for rejecting them." 713 F.3d at 1011. In this case, Wright advanced *no* arguments and presented *no* evidence in support of his alternative request

for home confinement. The motion he filed in the district court did not discuss any proposed conditions of home confinement, the efficacy of those conditions as a mechanism of deterrence, or how a condition of home confinement might serve as a "substitute for imprisonment" and address the district court's pronounced penological concerns. *Cf.* U.S.S.G. § 5F1.2.[11] Absent such arguments, the district court was not required to provide any further explanation.

As Wright failed to offer any "specific, nonfrivolous argument[s]" on this issue, *cf. Trujillo*, 713 F.3d at 1009, his home confinement request rests on the same legal and factual foundation as his request for a time-served sentence.[12] The district court fully considered and rejected

---

[11] The United States Sentencing Guidelines specify that "[h]ome confinement may be imposed as a condition of probation or supervised release, but only as a substitute for imprisonment." U.S.S.G. § 5F1.2. The Guidelines provide that this condition may or may not include various exceptions—such as for employment, education, and religious services—and may or may not include electronic surveillance. *Id.* Accordingly, a mere request for home detention, without details as to the proposed conditions or evidentiary support regarding their efficacy as appropriate security and monitoring measures, leaves the district court no basis to determine whether home confinement could serve as an appropriate "substitute for imprisonment." *See id.*

[12] For the most part, Wright's arguments in favor of home confinement in his motion are coextensive with the medical concerns that the district court addressed in its analysis regarding Wright's request for a sentence reduction to time served—such as access to sex offender treatment, difficulties created by his disabilities and vulnerability to COVID-19. Wright states in his motion that "home detention . . . will not detract from the punitive effect of the sentence," but offers no support for this assertion. As in *Chavez-Meza*, the response is made obvious by the record of Wright's sentencing: The district court concluded that his offense was "most deserving of significant punishment for punishment's

those contentions in its opinion. As the court provided a sufficient basis for meaningful review, it did not err by declining to address home confinement in greater detail. *See United States v. Amezcua-Vasquez*, 567 F.3d 1050, 1053 (9th Cir. 2009) ("[T]his obligation does 'not necessarily require lengthy explanation.'" (quoting *Rita*, 551 U.S. at 356)); *United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021) ("[A] brief order may well be sufficient for purposes of denying compassionate release."); *Ugbah*, 4 F.4th at 598 ("Section 3582(c)(1) concerns the length of imprisonment, not the length of judicial opinions."). Although Wright may insist that more weight be placed on his disabilities or the conditions of his incarceration, "mere disagreement does not amount to an abuse of discretion." *Dunn*, 728 F.3d at 1159.

This conclusion is buttressed by the features and background of the case. Here, as in *Chavez-Meza*, Wright's motion was decided by the same judge who sentenced him originally. During Wright's initial sentencing, that judge considered the effect supervised release would have on the potential for recidivism following Wright's term of incarceration, accounting fully for Wright's disabilities. In response to these concerns, the district court imposed no less than eleven lifetime supervised release conditions that directly address this issue, including computer monitoring and "significant intervention and oversight [by] the Probation Department." Whether or not additional conditions may further protect the public has no pertinence to whether Wright's incarceration should have been terminated early and a more stringent form of supervised release substituted. Given the arguments made and given the

---

sake alone," and incarceration is more onerous than being in a private home with relatives. Accordingly, there is no need for the sentencing judge to respond to this statement. *Cf. Chavez-Meza*, 138 S. Ct. at 1967.

judge's knowledge of the record, we are satisfied that the judge adequately "considered [Wright's motion] and [had] a reasoned basis for exercising his own legal decisionmaking authority." *Cf. Chavez-Meza*, 138 S. Ct. at 1967. That is all that the law requires.

Accordingly, we hold that the district court adequately explained its denial of Wright's motion for compassionate release. Accepting that the court was obligated to discuss Wright's home confinement request absent any affirmative argument or supporting evidence would require us to hold that a judge must explain his rejection of every form of relief mentioned in passing in a motion for sentence reduction. Both the facts and the reasoning of *Chavez-Meza* foreclose this proposition.[13] Although a sentencing judge has an obligation to explain his or her decision, he or she is not required to "invariably *acknowledge and address*" every form of relief the petitioner requests when the request is slight and unsupported. *High*, 997 F.3d at 188–89. Rather, the sentencing judge is only obligated to address the petitioner's "specific, nonfrivolous argument[s] tethered to a relevant § 3553(a) factor in support of a requested sentence."

---

[13] As noted above, the holding of a court encompasses "the facts giving rise to the dispute, other rules considered and rejected[,] and the views expressed in response to any dissent or concurrence." *Hart*, 266 F.3d at 1170. As "a sentence modification is 'not a plenary resentencing proceeding,'" the *Chavez-Meza* Court rejected the dissent's argument that a judge must articulate all of his reasoning on the record at resentencing—and declined to compel the judge to explain his rejection of the 108-month sentence the petitioner had proposed. *See* 138 S. Ct. at 1967 (quoting *Dillon*, 560 U.S. at 826). Absent nonfrivolous arguments in favor of Wright's home confinement request, we likewise decline to do so here.

*Carty*, 520 F.3d at 992–93. The district court has done so here.

## CONCLUSION

We **AFFIRM** the district court's denial of Wright's motion for compassionate release.

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee,*<br><br>v.<br><br>JOEL ALEXANDER WRIGHT,<br>*Defendant-Appellant.* | No. 20-50361<br><br>D.C. Nos.<br>3:16-cr-00354-DMS-1<br>3:16-cr-00354-DMS<br><br>ORDER AND<br>AMENDED OPINION |

Appeal from the United States District Court
for the Southern District of California
Dana M. Sabraw, Chief District Judge, Presiding

Argued and Submitted December 9, 2021
Pasadena, California

Filed July 29, 2022
Amended August 29, 2022

Before: Marsha S. Berzon and Carlos T. Bea, Circuit
Judges, and Richard D. Bennett,[*] District Judge.

Order;
Opinion by Judge Bennett

---

[*] The Honorable Richard D. Bennett, United States Senior District
Judge for the District of Maryland, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel amended an opinion filed July 29, 2022, affirming the district court's denial of Joel Alexander Wright's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) in which Wright requested a reduction to time served and immediate release, or, in the alternative, home detention for the balance of his sentence.

The panel amended the opinion to clarify that its holding applies equally to district court decisions that predate and postdate *United States v. Aruda*, 993 F.3d 797 (9th Cir. 2021) (per curiam).

Wright contended that the district court abused its discretion by denying his motion based on the dangerousness finding imposed by U.S.S.G. § 1B1.13. In *Aruda*, this Court held that the current version of § 1B1.13 is not an applicable policy statement for § 3582(c)(1)(A)(i) motions filed by a defendant. Following *Aruda*, while the Sentencing Commission's statements in § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A)(i) motions filed by a defendant, they cannot be treated as binding constraints on the court's analysis. Here, the district court did precisely what *Aruda* proscribes: it denied Wright's motion by holding that he failed to demonstrate that he is "not a danger to others or [to] the community" pursuant to § 1B1.13. The panel wrote that this holding is an abuse of discretion.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that *Aruda* error is harmless if the court properly relied on 18 U.S.C. § 3553(a) sentencing factors as an alternative basis for its denial of a compassionate release motion, as the district court did here when it held in the alternative that the 18 U.S.C. § 3553(a) sentencing factors weighed "squarely against" granting Wright's compassionate release motion. The panel wrote that although Wright may take issue with the balance the court struck, mere disagreement with the weight of these factors does not amount to an abuse of discretion. The panel therefore held that the district court's reliance on § 1B1.13 was harmless error.

Wright also contended that the district court abused its discretion by failing to respond to his alternative request to serve the rest of his sentence under home confinement. The panel held that the district court adequately addressed that request, as Wright did not adduce any evidence or advance any arguments in support of it, which rested on the same legal and factual foundation as his request for a time-served sentence. Given the arguments made and the judge's knowledge of the record, the panel was satisfied that the judge adequately considered Wright's motion and had a reasoned basis for exercising his own legal decision-making authority.

**COUNSEL**

Jessica Agatstein (argued) and Katie Hurrelbrink, Federal Defenders of San Diego Inc., San Diego, California, for Defendant-Appellant.

Joseph S. Green (argued), Assistant United States Attorney; Daniel E. Zipp, Chief, Appellate Section, Criminal Division; Randy S. Grossman, Acting United States Attorney; United States Attorney's Office, San Diego, California; for Plaintiff-Appellee.

## ORDER

The opinion filed July 29, 2022, is amended by the opinion filed concurrently with this order. These amendments clarify that our holding applies equally to district court decisions that predate and postdate *United States v. Aruda*, 993 F.3d 797 (9th Cir. 2021) (per curiam).

No future petitions for rehearing or rehearing en banc will be entertained. The mandate issued on August 22, 2022, remains in effect.

## OPINION

BENNETT, District Judge:

After pleading guilty in 2016 to the attempted enticement of a minor, Joel Alexander Wright was sentenced to 188 months' imprisonment followed by lifetime supervised release. After serving about five years of that sentence, Wright petitioned for compassionate release under 18 U.S.C. § 3582(c)(1)(A), requesting a sentence reduction to time served and immediate release, or, in the alternative, home detention for the balance of his sentence. After reviewing Wright's motion and his briefings, the district court denied this motion. On appeal, Wright contends the court abused its

discretion by denying his motion based on the dangerousness finding imposed by U.S.S.G. § 1B1.13, and by declining to consider his alternative request to serve the rest of his sentence under home confinement.

We affirm the holding of the district court as to both issues. We have recently held that a district court abuses its discretion by construing the U.S.S.G. § 1B1.13 policy statement as binding. *See United States v. Aruda*, 993 F.3d 797, 799, 802 (9th Cir. 2021) (per curiam).[1] Nevertheless, any error by the district court here in relying on § 1B1.13 was harmless in light of the court's alternative holding under the 18 U.S.C. § 3553(a) sentencing factors. Additionally, as Wright did not adduce any evidence or advance any arguments in support of his alternative request for home confinement, the district court adequately addressed that request.

## BACKGROUND[2]

In January 2016, Wright was arrested at the San Diego Airport for the attempted enticement of a minor and related charges. In April 2016, Wright waived indictment and pleaded guilty to violation of 18 U.S.C. § 2422(b). During his sentencing in July 2016, defense counsel recommended the statutory mandatory minimum 120 months'

---

[1] Wright's motion for compassionate release was filed in September 2020 and denied in December 2020, approximately four months before this Court issued its opinion in *Aruda* on April 8, 2021. The principles articulated in this opinion apply equally to district court decisions that predate and postdate *Aruda*.

[2] To the extent that record information referenced in this opinion has been filed under seal, we hereby unseal it for the limited purpose of this opinion.

imprisonment, while the Government requested 168 months. Defense counsel spoke to the unusual hardships Wright would experience in custody, and argued that "the reality of supervision, combined with his disabilities . . . should speak somewhat to the court's legitimate concern for incapacitation." The Government highlighted the very serious nature of Wright's offenses and noted that he had made "a sophisticated attempt" to commit them "despite all of his physical struggles."

On balance, the district court found that the facts of Wright's case were "most deserving of punishment for punishment's sake alone, and most deserving of imposing a sentence that will protect society." The court recognized that Wright's "overwhelmingly positive" personal history and characteristics—including his family support, his faith, and his remorse—counselled mitigation. Nevertheless, the Court noted that Wright had "continued to pursue this activity" despite his "remorse and misgivings," and notwithstanding his physical disabilities. Accordingly, commensurate with the advisory United States Sentencing Guidelines, and the 18 U.S.C. § 3553(a) sentencing factors, the court sentenced Wright to 188 months' imprisonment followed by a lifetime period of supervised release. Wright is housed at the Federal Correctional Institution ("FCI") Danbury, Connecticut, and is projected to be released in June of 2029.

Wright has struggled with disabilities throughout his life. Although Wright received some treatment in the custody of the Bureau of Prisons, his health continued to decline.

In September 2020, Wright filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), pursuant to the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. Through this motion, Wright requested a reduced sentence of time served, and argued in the

alternative that his sentence "be modified to allow him to serve the rest of his sentence under home confinement as a condition of supervised release." At the time of this motion, Wright had served about five years of his 188-month sentence, with approximately ten years remaining. In support of his request for a time-served sentence, Wright argued that his medical conditions rendered him particularly susceptible to COVID-19 and that the prisons were not equipped to protect him from the spread of the virus. In addition, Wright argued that the prison's COVID-19 lockdown protocols had prevented him from receiving the assistance he requires due to his disabilities.

Although Wright argued in favor of a time served sentence, he provided no additional arguments to support his alternative request for home confinement. Home confinement was mentioned in passing throughout the body of the motion, and Wright concluded by "respectfully request[ing] that the Court grant a reduction in his sentence to time served with a condition of home detention for the rest of his sentence," but he failed entirely to discuss why this request was appropriate. Nowhere in the motion was there any discussion of the specific conditions to be imposed, how such conditions would suffice to protect the public and prevent Wright from reoffending, or why such conditions would amount to just punishment in this case.

The district court denied Wright's motion on December 21, 2020. Declining to address whether Wright's medical conditions constitute "extraordinary and compelling" reasons for a sentence reduction, the court found that the U.S.S.G. § 1B1.13 policy statement and the 18 U.S.C. § 3553(a) sentencing factors weighed against a sentence reduction. Under § 1B1.13, the court found Wright had failed to show that he was "not a danger to others or the

community" given "the disturbing nature of Defendant's crime" and the fact that he had committed it while he "was already" suffering from the same disabilities. Under § 3553(a), the court reiterated its concerns about dangerousness, and concluded that the "overarching goals of punishment, deterrence, protection of society, and rehabilitation" weighed "squarely against" compassionate release. The court did not specifically address Wright's request for home confinement as a condition of supervised release.

This appeal followed.

## STANDARD OF REVIEW

A district court's ruling on a compassionate release motion under § 3582(c)(1) is reviewed for abuse of discretion. *Aruda*, 993 F.3d at 799. "A district court may abuse its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact." *Id.* (quoting *United States v. Dunn*, 728 F.3d 1151, 1155 (9th Cir. 2013)); *see United States v. Hinkson*, 585 F.3d 1247, 1251 (9th Cir. 2009) (en banc) (holding that a district court's ruling is an abuse of discretion if it reaches a conclusion that is "illogical, implausible, or without support in inferences that may be drawn from the facts in the record."); *Dunn*, 728 F.3d at 1159 ("[M]ere disagreement does not amount to an abuse of discretion.").

## DISCUSSION

## I.  The District Court's *Aruda* Error was Harmless in Light of its Alternative Holding Under § 3553(a)

Ordinarily, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v.*

*Keller*, 2 F.4th 1278, 1281 (9th Cir. 2021) (quoting 18 U.S.C. § 3582(c)). Through the Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, 98 Stat. 1837, Congress created a limited exception to this rule by authorizing courts to grant compassionate release when "extraordinary and compelling reasons" warrant a reduction in sentence. 18 U.S.C. § 3582(c)(1)(A)(i). As compassionate release derogates from the principle of finality, it is a "narrow" remedy, *see Freeman v. United States*, 564 U.S. 522, 526 (2011), and the court's disposition of a compassionate release motion "is discretionary, not mandatory," *United States v. Jones*, 980 F.3d 1098, 1106 (6th Cir. 2020) (citing *United States v. Curry*, 606 F.3d 323, 330 (6th Cir. 2010)).

The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, established significant changes to the procedures for filing a motion for compassionate release. As originally enacted, § 3582(c)(1)(A)(i) vested the Bureau of Prisons with exclusive discretion to file compassionate release motions. *Aruda*, 993 F.3d at 799. The Department of Justice found in 2013 that this process was marked by delays and mismanagement, and that the Bureau exercised this discretion so "sparingly" that "an average of only 24 imprisoned persons were released each year by BOP motion." *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020); *United States v. Brooker*, 976 F.3d 228, 230–32 (2d Cir. 2020) (observing that out of 208 prisoners approved for compassionate release, 13% died awaiting a final decision by the BOP Director). Accordingly, "Congress amended § 3582(c)(1)(A) to 'remove the Bureau of Prisons from its . . . role as a gatekeeper over compassionate release petitions,'" and to expand the use of the compassionate release process. *McCoy*, 981 F.3d at 276. Following the passage of the First Step Act, defendants are authorized to

directly petition the court for compassionate release after exhausting their administrative remedies within the Bureau of Prisons.**³** *Keller*, 2 F.4th at 1281.

The First Step Act grants courts the discretion to consider compassionate release motions on an individualized basis. *See Brooker*, 976 F.3d at 230. As the Sixth Circuit recently observed, the exercise of this discretion is controlled by three substantive considerations. *See Jones*, 980 F.3d at 1107–08 (citing *Dillon v. United States*, 560 U.S. 817, 827, 829–30 (2010)). First, the district court must determine whether "extraordinary and compelling reasons warrant" a sentence reduction. *Id.* at 1107–08 (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Second, the court must evaluate whether a reduction would be "consistent with *applicable* policy statements issued by the Sentencing Commission." *Id.* at 1108 (quoting 18 U.S.C. § 3582(c)(1)(A)). Third, the court must consider and weigh the factors set forth in 18 U.S.C. § 3553(a) to decide whether the requested sentence reduction is warranted "under the particular circumstances of the case." *Id.* (quoting *Dillon*, 560 U.S. at 827).**⁴** Although a district court must conclude

---

**³** Specifically, a defendant may file a motion for compassionate release only if he or she has submitted a request to the warden of his or her facility, and either: (1) the warden has denied that request and the defendant has exhausted all rights to appeal within the Bureau of Prisons; or (2) thirty days have lapsed since the request was submitted. *Keller*, 2 F.4th at 1281; 18 U.S.C. § 3582(c)(1)(A).

**⁴** These factors include, among other things: (1) the defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offense; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable sentence guidelines;

that a defendant satisfies all three predicates before granting a motion for compassionate release, it may deny compassionate release if a defendant fails to satisfy any of these grounds. *Keller*, 2 F.4th at 1284.

The Sentencing Commission's policy statement located at U.S.S.G. § 1B1.13 governs the analysis of compassionate release motions. This policy requires a court to determine that "[t]he defendant is not a danger to the safety of any other person or to the community" before granting compassionate release.  U.S.S.G.  § 1B1.13(2).[5]  However,  U.S.S.G. § 1B1.13 has not been updated to reflect the passage of the First Step Act. Consequently, in *United States v. Aruda*, this Court held that the current version of U.S.S.G. § 1B1.13 "is not an 'applicable policy statement[]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." 993 F.3d at 802 (quoting 18 U.S.C. § 3582(c)(1)(A)) (alteration in original).[6]  Following  *Aruda*, while "[t]he Sentencing

---

and (6) the need to avoid unwarranted sentencing disparities among similarly situated defendants. 18 U.S.C. § 3553(a).

[5] To make a dangerousness finding, a court must consider: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger the defendant would pose to others upon release. 18 U.S.C. § 3142(g).

[6] In so holding, we joined a growing consensus among the federal circuits that § 1B1.13 is not an "applicable policy statement" to defense-filed compassionate release motions in light of the First Step Act. *United States v. Long*, 997 F.3d 342, 355 (D.C. Cir. 2021); *Brooker*, 976 F.3d at 235–36; *McCoy*, 981 F.3d at 281–82; *United States v. Shkambi*, 993 F.3d 388, 392–93 (5th Cir. 2021); *Jones*, 980 F.3d at 1109–11; *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020); *United States v. McGee*, 992 F.3d 1035, 1049–50 (10th Cir. 2021). *But see United States v. Bryant*, 996 F.3d 1243, 1247 (11th Cir. 2021) ("1B1.13

Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant," they cannot be treated as binding constraints on the court's analysis. 993 F.3d at 802.

In the case before us, the district court did precisely what *Aruda* proscribes: It denied Wright's motion by holding that he failed to demonstrate that he is "not a danger to others or [to] the community" pursuant to U.S.S.G. § 1B1.13. This holding was an abuse of discretion. However, the court also held in the alternative that the 18 U.S.C. § 3553(a) sentencing factors weighed "squarely against" granting Wright's compassionate release motion. Accordingly, this case requires us to decide whether an *Aruda* error requires reversal if the district court denies the defendant's motion under § 3553(a) in the alternative. For the reasons stated below, we hold that such an error is harmless.

As an initial matter, we must determine whether *Aruda* controls this issue. "[W]here a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit," *United States v. McAdory*, 935 F.3d 838, 843 (9th Cir. 2019) (quoting *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1173 (9th Cir. 2004)) (alteration in original), and "the matter is deemed resolved, unless overruled by the court itself sitting en banc, or by the Supreme Court." *Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001). To determine the scope of a prior holding, a court must evaluate not only "the rule announced, but also the facts giving rise to the dispute, other rules considered and rejected[,] and the views expressed in

---

is still an applicable policy statement for a [compassionate release] motion, no matter who files it.").

response to any dissent or concurrence." *Id.* at 1170–71 (citing *Fisher v. Prince*, 97 Eng. Rep. 876, 876 (K.B. 1762)).

Wright claims *Aruda* forecloses any harmless error analysis, as the district court in that case also weighed the § 3553(a) sentencing factors, and we did not hold that its reliance on § 1B1.13 was harmless. *See United States v. Aruda*, 472 F. Supp. 3d 847, 856 (D. Haw. 2020). We disagree. Whatever factual similarities may exist between these cases,[7] the Government did not argue harmless error in *Aruda*, and the *Aruda* panel did not mention this issue anywhere in its opinion, much less grant it "reasoned consideration." *McAdory*, 935 F.3d at 843 (quoting *Cetacean*, 386 F.3d at 1173); *accord United States v. Murguia-Rodriguez*, 815 F.3d 566, 572 (9th Cir. 2016) ("As a general and consistent rule, 'when the government fails to argue harmlessness, we . . . do not consider the harmlessness of any errors we find.'") (quoting *United States v. Kloehn*, 620 F.3d 1122, 1130 (9th Cir. 2010)); *United States v. Gonzalez-Flores*, 418 F.3d 1093, 1100 (9th Cir. 2005)).[8]

---

[7] We are skeptical that *Aruda* is analogous. The district court in *Aruda* conflated its assessment of § 3553(a) and § 1B1.13 and analyzed the two standards in tandem. *See id.* at 856 (assessing "Section 3553(a) Factors & Risk of Danger to the Community"). Here, the district court kept the analyses largely distinct. Although the court incorporated related facts from the dangerousness analysis by reference, this was not error—both standards explicitly require the court to consider "the nature and circumstances of the offense" and "the history and characteristics" of the defendant, as well as the need to protect the public. *Compare* 18 U.S.C. § 3142(g) (dangerousness), *with* 18 U.S.C. § 3553(a)(1), (2) (sentencing factors).

[8] Wright argues that the Government in *Aruda* addressed this issue in the closing paragraphs of its brief. This contention mischaracterizes the Government's position, which is better viewed as an argument for judicial restraint. The Government argued only that the *Aruda* Court

14 UNITED STATES v. WRIGHT

Accordingly, the holding in *Aruda* does not stretch as far as Wright contends.

This Court's subsequent decisions suggest that the district court's error in this case was harmless. In *United States v. Keller*, decided after *Aruda*, we held that "a district court that properly *denies* compassionate release need not evaluate each step" in the "sequential step-by-step analysis" required by 18 U.S.C. § 3582(c)(1)(A). 2 F.4th at 1284 (emphasis in original). Such a reading is compelled by the structure of the compassionate release statute, which treats its requirements as conjunctive. *Id.* This structure necessarily dictates that a court may deny compassionate release at any stage of the § 3582(c)(1)(A) pipeline. *See, e.g.*, *United States v. Keitt*, 21 F.4th 67, 73 n.4 (2d Cir. 2021) (collecting cases); *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021); *United States v. Tinker*, 14 F.4th 1234, 1238–40 (11th Cir. 2021). The logical endpoint of this rule is that when a district court properly denies a compassionate release motion on at least one ground, improper considerations at other steps of this analysis have no effect on the final disposition. Such errors are harmless, and do not require reversal.

---

should rule on the § 3553(a) factors without deciding whether § 1B1.13 was an "applicable policy statement"—it did not claim that any erroneous application of § 1B1.13 had no effect on the result. To the extent that this may be construed as a harmless error argument, it was undeveloped and was not addressed by the court. *See Murguia-Rodriguez*, 815 F.3d at 572–73 (emphasizing that this court will ordinarily decline to address harmless error "even when the government 'mentions' that harmless error applies in its brief but fails to advance a developed theory about how the errors were harmless.'" (quoting *Gonzalez-Flores*, 418 F.3d at 1100 n.4)).

Consistent with this proposition, other circuits to address the issue have held that an erroneous application of § 1B1.13 is harmless if "the court's weighing of the § 3553(a) factors independently supports its decision." *United States v. Sanders*, 992 F.3d 583, 588 n.3 (7th Cir. 2021); *see, e.g.*, *United States v. Tomes*, 990 F.3d 500, 503 (6th Cir. 2021) ("[E]ven if a district court wrongly constrains itself to § 1B1.13 to define extraordinary and compelling reasons for release, we can still affirm if the court uses § 3553(a) as an independent reason to deny relief.").[9] We hold that although a district court addressing a compassionate release motion filed by a defendant may not construe U.S.S.G. § 1B1.13 as a binding constraint on its discretion, such an error is harmless if the court properly relied on the 18 U.S.C. § 3553(a) sentencing factors as an alternative basis for its holding.

Such is the case here. In its opinion denying Wright's motion, the district court improperly relied on U.S.S.G. § 1B1.13 to conclude that Wright presents a danger to the community. However, the district court held in the alternative that the § 3553(a) factors "weigh squarely against

---

[9] This Court has consistently reached the same conclusion in non-precedential memorandum dispositions interpreting *Aruda* and *Keller*. *See, e.g.*, *United States v. Washington*, No. 21-10017, 2021 WL 5399861, *1 (9th Cir. Nov. 18, 2021); *United States v. Smith*, No. 21-50017, 2021 WL 4922412, *1 (9th Cir. Oct. 21, 2021); *United States v. Decano*, No. 21-10099, 2021 WL 4922348, *1 (9th Cir. Oct. 21, 2021); *United States v. Granderson*, No. 20-10407, 857 F. App'x 407, 407 (9th Cir. Aug. 23, 2021); *United States v. Tadios*, No. 20-10434, 854 F. App'x 804, 804 (9th Cir. Aug. 2, 2021). Although memorandum dispositions are "not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion," *Grimm v. City of Portland*, 971 F.3d 1060, 1067 (2020) (quoting U.S. Ct. of App. 9th Cir. R. 36-3(a)), we find the reasoning in these memorandum dispositions persuasive.

release." In its evaluation of the § 3553(a) sentencing factors, the court concluded that the severity of Wright's offense underscored "the need to provide just punishment and promote respect for law" and the "strong need to protect the public." The court correctly weighed these considerations against Wright's "history and characteristics, including [his] positive support from family members and others as well as his various health ailments and difficult childhood." And it concluded that "[t]o so dramatically reduce [Wright's] sentence . . . would neither be just nor promote respect for the law; if anything, it would promote disrespect for the law." Although Wright may take issue with the balance the court struck, "mere disagreement" with the weight of these factors "does not amount to an abuse of discretion." *Dunn*, 728 F.3d at 1159. We therefore hold that the district court's reliance on § 1B1.13 was harmless error.

## II. The Court Adequately Explained its Denial of Wright's Motion

Wright also contends that the district court abused its discretion by failing to respond to his request for home confinement. "It is a general principle of federal sentencing law that district courts have a duty to explain their sentencing decisions." *United States v. Emmett*, 749 F.3d 817, 820 (9th Cir. 2014) (citing *United States v. Carty*, 520 F.3d 984, 992–93 (9th Cir. 2008) (en banc); *United States v. Trujillo*, 713 F.3d 1003, 1009 (9th Cir. 2013)); *accord Concepcion v. United States*, ___ S. Ct. ___, 2022 WL 2295029, at *12 (2022) ("It is well established that a district court must generally consider the parties' nonfrivolous arguments before it."). As the duty to provide a reasoned explanation is ultimately grounded in the sentencing court's responsibility to consider the § 3553(a) factors, *Trujillo*, 713 F.3d at 1009, it applies both "to the initial sentence imposed by the district

court, and . . . to rulings on requests for a sentenc[e] reduction," *Emmett*, 749 F.3d at 820; *accord Chavez-Meza v. United States*, 138 S. Ct. 1959, 1963 (2018) (anchoring this duty in the statutory requirement that judges their explain sentencing decisions "in open court" (quoting 18 U.S.C. § 3553(c))). Such explanations facilitate "meaningful appellate review" of sentencing decisions, *Gall v. United States*, 552 U.S. 38, 50 (2007), and reinforce "the public's trust in the judicial institution," *Rita v. United States*, 551 U.S. 338, 356 (2007), by "communicat[ing] that the parties' arguments have been heard, and that a reasoned decision has been made," *Carty*, 520 F.3d at 992.

To fulfill this responsibility, a sentencing judge must articulate "a sufficient explanation of the sentencing decision to permit meaningful appellate review." *Trujillo*, 713 F.3d at 1009; *accord United States v. Cook*, 998 F.3d 1180, 1183–84 (11th Cir. 2021); *United States v. High*, 997 F.3d 181, 188–89 (4th Cir. 2021). What constitutes sufficient explanation depends on "the complexity of the particular case," including the exhaustiveness of the record and the nature of the parties' arguments. *Carty*, 520 F.3d at 995–96. Ordinarily, a judge should address any "specific, nonfrivolous argument tethered to a relevant § 3553(a) factor in support of a requested sentence," and "explain why he accepts or rejects the party's position." *Id.* at 992–93. Nevertheless, a judge is not required to exhaustively analyze every factor or to expound upon every issue raised by a defendant. *Id.* at 995–96; *accord High*, 997 F.3d at 188–89 (rejecting a "categorical rule" that a sentencing court must "invariably *acknowledge and address* each of the defendant's arguments on the record" (emphasis in original)). Rather, the judge "need only 'set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own

legal decisionmaking authority.'" *Chavez-Meza*, 138 S. Ct. at 1964 (citation omitted). Provided this standard is met, the length and exhaustiveness of a judicial explanation is a matter of "professional judgment." *Rita*, 551 U.S. at 356; *accord United States v. Ugbah*, 4 F.4th 595, 598 (7th Cir. 2021) ("Section 3582(c)(1) concerns the length of imprisonment, not the length of judicial opinions.").

Consistent with these principles, in *United States v. Trujillo*, this Court held that a district court erred when it overlooked extensive, nonfrivolous arguments and evidence filed in support of relevant § 3553(a) factors. 713 F.3d at 1010. In *Trujillo*, the defendant filed a motion for sentence reduction under 18 U.S.C. § 3582(c)(2), citing "his family ties, his lack of other criminal history, his post-sentencing rehabilitation, and the need to avoid unwarranted sentencing disparities." *Id.* at 1005. The district court denied his motion, highlighting only the nature and circumstances of the offense, and offering no discussion of Trujillo's evidence. *Id.* On appeal, we reversed, observing that the court had failed to address "fairly extensive arguments and evidence concerning the 'characteristics of the defendant,' . . . and 'unwarranted sentencing disparities,'" two § 3553(a) factors. *Id.* at 1009–10 (citing 18 U.S.C. §§ 3553(a)(1), 3553(a)(6)).[10] Reasoning that the Supreme Court has

---

[10] The appellant in *Trujillo* presented evidence of "his educational history including graduation from technical school as a mechanical electrician; the support of his siblings and two children; his considerable involvement in constructive prison activities; his post-sentencing rehabilitation; and his failing health." *See Trujillo*, 713 F.3d at 1009. He also cited two decisions by this Court as evidence of the sentencing disparities he claimed in his motion. *See United States v. Zakharov*, 468 F.3d 1171, 1171, 1175 (9th Cir. 2006); *United States v. Perlaza*, 439 F.3d 1149, 1155, 1158 (9th Cir. 2006). The sentencing court failed to address any of these materials.

emphasized the importance of this evidence, we held that the court's "total omission" of Trujillo's "nonfrivolous arguments" pursuant to these factors contravened "the explicit policy considerations" articulated in *Rita* and its progeny. *Id.* at 1010–11.

Comparatively, if "the 'context and the record'" reflect that the sentencing judge considered the defendant's substantive arguments and offered "a reasoned basis" for his or her decision, a judge need not "provide a lengthy explanation" for his or her sentencing decision. *Chavez-Meza*, 138 S. Ct. at 1966 (quoting *Rita*, 551 U.S. at 356, 359). In *United States v. Chavez-Meza*, the petitioner filed a motion under 18 U.S.C. § 3582(c)(2), seeking to reduce his sentence to 108 months following an intervening change in the Guidelines range applicable to his conviction, and offered evidence of rehabilitation in support of this motion. *Id.* at 1965, 1967. The district court granted Chavez-Mesa's motion in part, but reduced his sentence only to 114 months, rather than the 108 he requested. *Id.* at 1965. The judge issued his decision on a form order on which he merely checked boxes certifying that he "had 'considered' petitioner's 'motion' and 'tak[en] into account' the § 3553(a) factors." *Id.* (alteration in original). The court offered no further explanation or analysis.

Chavez-Meza appealed, arguing "that the judge did not adequately explain why he rejected petitioner's 108-month request." *Id.* at 1965. The Supreme Court rejected this assertion, placing particular emphasis on "the simplicity of [the] case, the judge's awareness of the arguments, his consideration of the relevant sentencing factors, and the intuitive reason" for his decision. *Id.* at 1967–68. Additionally, the Court observed that petitioner's motion under § 3582(c)(2) had been denied by "the same judge who

had sentenced petitioner originally," and at the original sentencing hearing, the judge had rejected a downward departure from the Guidelines range due to the severity of the offense. *Id.* at 1966–67. These features of the case were sufficient to explain why the judge issued "a sentence somewhat higher than the bottom of the reduced range" in response to Chavez-Meza's motion. *Id.* at 1967. Accordingly, the "record as a whole satisfie[d]" the Court that the sentencing judge had "considered the parties' arguments" and offered "a reasoned basis for exercising his own legal decisionmaking authority." *Id.* (quoting *Rita*, 551 U.S. at 356).

Wright attempts to analogize *Trujillo*, arguing that the district court "failed to even consider" his alternative request for home confinement, and that this "total omission" violates its responsibility to explain its sentencing decisions. He argues that his request for home confinement would allow the district court to maintain his 188-month sentence, ameliorating the court's penological concerns regarding deterrence, just punishment, and respect for the law, while accounting for his medical conditions and mitigating the risk that he would pose to the public upon release. He also argues that "going from a no-confinement sentence to a home-confinement sentence tilts the entire § 3553(a) balance in the movant's direction." Wright did not present these arguments in his motion to the district court. His failure to do so is dispositive of any claim that the court failed to explain its decision.[11]

---

[11] Pursuant to Fed. R. App. P. 28(j), Wright filed a citation of supplemental authorities referencing the Supreme Court's recent decision in *Concepcion v. United States* for the principle that a district court is "required" to "demonstrate that it has considered the arguments

As a preliminary matter, a modified time-served sentence is a "necessary predicate" to Wright's home confinement request. Although the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), allows a court to reduce a defendant's term of imprisonment, it does not authorize a judge to alter the location of a prisoner's confinement, a matter committed to the discretion of the Bureau of Prisons. *United States v. Ceballos*, 671 F.3d 852, 855 (9th Cir. 2011) (per curiam) ("While a [district court] judge has wide discretion in determining the length and type of sentence, the court has no jurisdiction to select the place where the sentence will be served. Authority to determine place of confinement . . . is delegated to the Bureau of Prisons." (quoting *United States v. Dragna*, 746 F.2d 457, 458 (9th Cir. 1984) (per curiam) (alteration in original)). Instead, upon granting a sentence reduction, a court "may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment," 18 U.S.C. § 3582(c)(1)(A), including a condition of home detention "as a substitute for imprisonment." U.S.S.G. § 5F1.2; *see also* 18 U.S.C. § 3583(c).

---

before it." ___ S. Ct. ___, 2022 WL 2295029, at *12 (2022). This language is largely reiterative of the principles announced in *Rita* and *Chavez-Meza*. *Cf.* 551 U.S. at 356 ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); 138 S. Ct. at 1964 ("At bottom, the sentencing judge need only 'set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority.'"). In any event, *Concepcion* does not help Wright, who failed to offer the district court any independent arguments in favor of his alternative request for home confinement.

Accordingly, Wright's request for home confinement would not allow the district court to "keep his 188-month sentence" intact, and would not address the court's concerns regarding just punishment, deterrence, and respect for the law. (emphasis omitted). Granting this request would require the district court to reduce his sentence to time served and impose home detention as a condition of supervised release. The district court provided "a reasoned basis" for its refusal to do so, *Chavez-Meza*, 138 S. Ct. at 1966, when it observed that Wright had committed his crime while he "was already [disabled]," and held that the "overarching goals of punishment, deterrence, protection of society, and rehabilitation" weigh "squarely against" a time-served sentence.

In his briefing before this Court, Wright argues that a condition of home confinement would shift "the entire § 3553(a) balance in the movant's direction," and ameliorate the district court's concerns about dangerousness and recidivism by enhancing the level of supervision imposed in his original sentence. However, it was Wright's burden to establish his eligibility for compassionate release, and he did not present these arguments to the district court. Accordingly, *Trujillo* is inapposite: In that case, "Trujillo presented nonfrivolous arguments, and the district court did not at all explain the reasons for rejecting them." 713 F.3d at 1011. In this case, Wright advanced *no* arguments and presented *no* evidence in support of his alternative request for home confinement. The motion he filed in the district court did not discuss any proposed conditions of home confinement, the efficacy of those conditions as a mechanism of deterrence, or how a condition of home confinement might serve as a "substitute for imprisonment" and address the district court's pronounced penological

concerns. *Cf.* U.S.S.G. § 5F1.2.[12] Absent such arguments, the district court was not required to provide any further explanation.

As Wright failed to offer any "specific, nonfrivolous argument[s]" on this issue, *cf. Trujillo*, 713 F.3d at 1009, his home confinement request rests on the same legal and factual foundation as his request for a time-served sentence.[13] The district court fully considered and rejected those contentions in its opinion. As the court provided a sufficient basis for meaningful review, it did not err by declining to address home confinement in greater detail. *See United States v. Amezcua-Vasquez*, 567 F.3d 1050, 1053 (9th

___

[12] The United States Sentencing Guidelines specify that "[h]ome confinement may be imposed as a condition of probation or supervised release, but only as a substitute for imprisonment." U.S.S.G. § 5F1.2. The Guidelines provide that this condition may or may not include various exceptions—such as for employment, education, and religious services—and may or may not include electronic surveillance. *Id.* Accordingly, a mere request for home detention, without details as to the proposed conditions or evidentiary support regarding their efficacy as appropriate security and monitoring measures, leaves the district court no basis to determine whether home confinement could serve as an appropriate "substitute for imprisonment." *See id.*

[13] For the most part, Wright's arguments in favor of home confinement in his motion are coextensive with the medical concerns that the district court addressed in its analysis regarding Wright's request for a sentence reduction to time served—such as access to sex offender treatment, difficulties created by his disabilities and vulnerability to COVID-19. Wright states in his motion that "home detention . . . will not detract from the punitive effect of the sentence," but offers no support for this assertion. As in *Chavez-Meza*, the response is made obvious by the record of Wright's sentencing: The district court concluded that his offense was "most deserving of significant punishment for punishment's sake alone," and incarceration is more onerous than being in a private home with relatives. Accordingly, there is no need for the sentencing judge to respond to this statement. *Cf. Chavez-Meza*, 138 S. Ct. at 1967.

Cir. 2009) ("[T]his obligation does 'not necessarily require lengthy explanation.'" (quoting *Rita*, 551 U.S. at 356)); *United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021) ("[A] brief order may well be sufficient for purposes of denying compassionate release."); *Ugbah*, 4 F.4th at 598 ("Section 3582(c)(1) concerns the length of imprisonment, not the length of judicial opinions."). Although Wright may insist that more weight be placed on his disabilities or the conditions of his incarceration, "mere disagreement does not amount to an abuse of discretion." *Dunn*, 728 F.3d at 1159.

This conclusion is buttressed by the features and background of the case. Here, as in *Chavez-Meza*, Wright's motion was decided by the same judge who sentenced him originally. During Wright's initial sentencing, that judge considered the effect supervised release would have on the potential for recidivism following Wright's term of incarceration, accounting fully for Wright's disabilities. In response to these concerns, the district court imposed no less than eleven lifetime supervised release conditions that directly address this issue, including computer monitoring and "significant intervention and oversight [by] the Probation Department." Whether or not additional conditions may further protect the public has no pertinence to whether Wright's incarceration should have been terminated early and a more stringent form of supervised release substituted. Given the arguments made and given the judge's knowledge of the record, we are satisfied that the judge adequately "considered [Wright's motion] and [had] a reasoned basis for exercising his own legal decisionmaking authority." *Cf. Chavez-Meza*, 138 S. Ct. at 1967. That is all that the law requires.

Accordingly, we hold that the district court adequately explained its denial of Wright's motion for compassionate

release. Accepting that the court was obligated to discuss Wright's home confinement request absent any affirmative argument or supporting evidence would require us to hold that a judge must explain his rejection of every form of relief mentioned in passing in a motion for sentence reduction. Both the facts and the reasoning of *Chavez-Meza* foreclose this proposition.[14] Although a sentencing judge has an obligation to explain his or her decision, he or she is not required to "invariably *acknowledge and address*" every form of relief the petitioner requests when the request is slight and unsupported. *High*, 997 F.3d at 188–89. Rather, the sentencing judge is only obligated to address the petitioner's "specific, nonfrivolous argument[s] tethered to a relevant § 3553(a) factor in support of a requested sentence." *Carty*, 520 F.3d at 992–93. The district court has done so here.

## CONCLUSION

We **AFFIRM** the district court's denial of Wright's motion for compassionate release.

---

[14] As noted above, the holding of a court encompasses "the facts giving rise to the dispute, other rules considered and rejected[,] and the views expressed in response to any dissent or concurrence." *Hart*, 266 F.3d at 1170. As "a sentence modification is 'not a plenary resentencing proceeding,'" the *Chavez-Meza* Court rejected the dissent's argument that a judge must articulate all of his reasoning on the record at resentencing—and declined to compel the judge to explain his rejection of the 108-month sentence the petitioner had proposed. *See* 138 S. Ct. at 1967 (quoting *Dillon*, 560 U.S. at 826). Absent nonfrivolous arguments in favor of Wright's home confinement request, we likewise decline to do so here.